1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| MARIA ESTRADA, as individuals and on behalf of all similarly situated employees, | Case No. 2:22-CV-00572-SPG (AGRx) |
| | **ORDER GRANTING, IN PART, and DENYING, IN PART, MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT [ECF No. 52]** |
| Plaintiff, | |
| v. | |
| DENNY'S INC., and DOES 1 through 10, inclusive, | |
| Defendants. | |

11
12
13
14
15
16
17
18

19        Before the Court is Plaintiff Maria Estrada and Representative Plaintiff Myra De

20   Leon's (collectively, "Plaintiffs") Motion for Preliminary Approval of Class Action

21   Settlement and Setting of Final Approval Hearing ("Motion").  (ECF No. 52 ("Mot.")).

22   Having considered Plaintiffs' submissions, arguments at the hearing, the relevant law, and

23   the record in this case, the Court grants, in part, and denies, in part, the Motion.

24   **I.      BACKGROUND**

25          **A.      Plaintiffs' Allegations**

26          The proposed Settlement arises out of the following allegations::

27          Plaintiff Estrada and Plaintiff De Leon both worked as hourly, non-exempt

28   employees for Denny's in one of Denny's California locations.  (ECF No. 38 ("FAC") ¶¶

13–15).    Plaintiff Estrada began her employment with Defendant in 2009 and left Defendant's employment on or about March 18, 2020.[1]  (*Id.* ¶ 13).  Plaintiff Estrada worked as a line cook at a Defendant location in Los Angeles, California, and her main duties included preparing and cooking food, and "keeping her workplace clean."  (ECF No. 52-8 ("Estrada Decl.") ¶ 3; Mot. at 11).    Plaintiff De Leon began her employment with Defendant in 2014 as a waitress at a Defendant location in Hollywood, California, and left in October 2019.  (FAC ¶ 14; ECF No. 52-7 ("De Leon Decl.") ¶ 3).    Her main duties included taking customers' food and drink orders, relaying those orders to the kitchen, and serving food.  (*Id.*; Mot. at 11).    Plaintiff De Leon was training to become an assistant manager.  (FAC ¶ 14).    Each member of the Plaintiff Class is also a current and/or former similarly situated person employed by Defendant during the Class Period[2] as a non-exempt employee.  *See* (*id.* ¶ 1).

Plaintiffs allege Defendants failed to pay Plaintiff Class for all hours worked; refused to permit Plaintiff Class to take rest periods, or legally compliant meal periods, or providing compensation in lieu of the entitled periods; refused to furnish to Plaintiff Class itemized wage statements upon payment of wages; refused to compensate Plaintiff Estrada and some members of Plaintiff Class wages due at the time of employment conclusion; failed to reimburse Plaintiff Class for necessary business expenditures; and failed to provide schedules so as to reasonably ensure employees took timely rest and meal periods.  *See, e.g.*, (*id.* ¶¶ 5, 35).    According to the FAC, Defendant had a policy and practice of not paying Plaintiff Estrada and Class Members for all hours worked by requiring its employees to work off-the-clock, including by: requiring employees to perform work duties before and after clocking in for their first regularly scheduled shift, requiring employees to work during rest and meal periods when they were otherwise "ostensibly

---

[1] Plaintiff Estrada represents in her accompanying declaration that her employment ended on approximately December 9, 2019.  (ECF No. 52-8 ("Estrada Decl.") ¶ 3).

[2] The Settlement Agreement defines the Class Period as extending from December 9, 2017, to August 4, 2022.  (ECF No. 52-1 at 26).

'duty-free,'" and providing employees with employer-branded shirts and aprons and requiring employees to wear a clean garment before each shift but failing to reimburse employees. (*id.* ¶¶ 27–41).

### B. Procedural Background

On October 16, 2019, Plaintiff De Leon submitted to the State of California's Labor Workforce Development Agency ("LWDA") a Notice of Labor Code Violations by Defendant. (*Id.* ¶ 10). On June 2, 2020, Plaintiff De Leon brought a Private Attorney General Act ("PAGA") representative action against Defendant for violations of the California Labor Code and applicable Industrial Welfare Commission ("IWC") Wage Orders on behalf of the State of California and all hourly, non-exempt, aggrieved employees that worked at a California location of Defendant. (ECF No. 52-1 at 2–3). The PAGA Action involved allegations that sought civil penalties for the following Labor Code violations: Sections 210-204, 221-225.5, 226, 510, 512, 558, 1174, 1194, 1197 and 2802. (*Id.* at 3). The PAGA Action continued through discovery, including several disputes over Defendant's refusal to provide Plaintiff DeLeon with responsive information to her discovery requests. *See* (*id.* at 3). The PAGA Action was set for trial on October 25, 2022. (*Id.*).

Plaintiff De Leon also brought a class action against Defendant in Los Angeles Superior Court on October 28, 2019. (*Id.* at 4). On February 3, 2020, Defendant removed the action to federal court (2:20-cv-1082-JFW (MRWx)). *See* (ECF No. 52-1 at 4). The federal judge in that action set a deadline for Plaintiff DeLeon to seek class certification by June 2, 2020. Plaintiff De Leon did not file such motion due to COVID-19 disruption and "a law firm's employee's failure to calendar the deadline." (*Id.*). Defendant's subsequent motion to dismiss was granted on July 22, 2020. (*Id.*).

Thereafter, Plaintiff Estrada filed this Class Action in California Superior Court on December 9, 2021. (*Id.*). The Complaint asserts the following violations of the California Labor Code: (1) failure to pay all wages due, including overtime wages (Sections 510, 1194 and IWC Wage Order 5-2001, July 1, 2002, *as amended*, Sections 3 and 5); (2) failure to

provide legally compliant meal periods or pay penalty in lieu thereof (Sections 226.7, 512 and IWC Wage Order 5-2001, July 1, 2002, *as amended,* Section 11); (3) failure to provide legally compliant rest periods or penalty in lieu thereof (Section 226.7 and IWC Wage Order 5-2001, July 1, 2002, *as amended*, Section 12); (4) failure to provide accurate itemized wage statements and maintain accurate employee records (Sections 226 subd. (a), 1174, and 1175); (5) failure to pay all wages due to employee at separation of employment (Sections 201-203); and (6) failure to reimburse employees necessary business expenditures (Section 2802). (FAC ¶¶ 2, 8).

On January 26, 2022, Defendant removed the action to federal court. (ECF No. 1). On April 13, 2022, Defendant changed counsel, (ECF No. 24), and "soon thereafter," the parties agreed to schedule mediation for the Estrada Class Action "as well as the De Leon PAGA Action." (ECF No. 52-1 at 5). On August 4, 2022, the Parties participated in a full day mediation with Hon. Carl West (Ret.) and reached settlement shortly thereafter. (*Id.*).

On May 12, 2023, pursuant to the Settlement Agreement, the Parties submitted a stipulated request for leave to file an amended Complaint to add Plaintiff De Leon and the PAGA Action to the Estrada Class Action, which the Court granted on May 15, 2023.[3] (ECF No. 36 at 3; ECF No. 37). On May 16, 2023, the FAC was filed, which included the newly-asserted PAGA claim. *See* (FAC ¶¶ 99–105). The PAGA Action was apparently dismissed in state court. (ECF No.52-1 at 4).

On October 27, 2023, Plaintiffs filed a motion for preliminary approval of the Settlement Agreement. (Mot.). On November 16, 2023, Defendant submitted a limited objection correcting a representation made regarding the number of Denny's Restaurants owned and operated by Defendant in California. (ECF No. 55). Defendant did not otherwise object substantively to the motion for preliminary approval. *See* (*id.*).

---

[3] Plaintiffs state that "PAGA Action was consolidated with this Action." (ECF No. 52-1 at 4). No formal consolidation finding was made by the Court.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### C.    The Settlement Agreement

According to Plaintiff's counsel, on August 4, 2022, the parties engaged in an "all-day, arms-length mediation with experienced wage and hour mediator, Hon. Carl West" and agreed on a settlement.  (ECF No. 52-1 at 5).  The Settlement Agreement, attached to the Motion, is the result of the parties exchanging and negotiating drafts of the settlement agreement.  *See* (*id.* at 5, 24–52).

### 1.    Class Definition

Pursuant to the Settlement Agreement, Defendant agrees to pay a settlement amount as a full and complete settlement of all claims asserted in the Class Action and PAGA action.  *See* (Mot. at 15).  The Settlement Agreement defines the Class as all individuals who worked for Denny's in California and classified as non-exempt, hourly employees at any location in California between December 9, 2017, to August 4, 2022 (the "Class Period").. (ECF No. 52-1 at 25–26).  The Agreement further defines Aggrieved Employees as persons employed by Denny's in California classified as a non-exempt hourly employee from October 16, 2018, to August 4, 2022 (the "PAGA Period").  (*Id.* at 25–27).  Participating Class Members are those Class Members who do not submit a valid and timely Request for Exclusion from the Settlement.  (*Id.* at 28).

### 2.    Monetary Relief

Pursuant to the Settlement Agreement, Defendant agrees to pay an amount not to exceed $4,000,000.00 (the "Total Settlement Amount" or "TSA").  (*Id.* at 30).  The Total Settlement Amount excludes Defendant's side of payroll taxes, which Defendant will pay separately.   The TSA includes payments made to: Class Members, settlement administration costs, any court-approved awards of attorneys' fees and costs, any service awards for the Representative Plaintiff, and payment to the LWDA.  (*Id.*).  The amount that will be distributed to Participating Class Members is the "Individual Class Payment" that is paid from the Net Settlement Amount, which is the amount left over after the

identified payments are made from the TSA.[4]  (*Id.* at 27).  The Individual Class Payment is calculated on a pro rata basis to Participating Class Members based on the total number of Workweeks worked during the Class Period, as described more fully below.  (*Id.*).

The Settlement Agreement provides the following allocation of the TSA:

Administration: the parties request that Phoenix Class Action Administrators be approved to handle administration.  (Mot. at 15).  The Settlement Agreement provides that the cost of the Administration shall not exceed $50,000.00.  (ECF No. 52-1 at 31).

Service Payment(s): Defendant will not oppose an application for Class Representative Service Payment in the amount of $5,000 to Plaintiff Estrada.  (*Id.* at 30).  Defendant also will not oppose a "PAGA Representative Payment"[5] in the amount of $5,000.00 to PAGA Representative De Leon.  (*Id.*).

Class Counsel: Defendant will not oppose Class/PAGA Counsel's (hereinafter "Class Counsel") application for a fees award that is up to $1,320,000.00, which is apparently "33% of the Total Settlement Amount."  (*Id.* at 30–31).  The Settlement Agreement also provides for Class Counsel to seek a payment not to exceed $30,000 for litigation expenses and costs.  (*Id.*).

PAGA Penalties: The Settlement Agreement provides for a $50,000.00 PAGA penalty that is allocated, per California Labor Code § 2699(i), *see* (Mot. at 16), as follows: 75% of the penalty goes to the LWDA, amounting to $37,500.00; and 25% of the penalty goes to Aggrieved Employees, amounting to $12,500.00, which will be distributed from the TSA.  (ECF No. 52-1 at 31).

---

[4] The Settlement Agreement defines the Net Settlement Amount as "the Total Settlement Amount, less the following payments in the amounts approved by the Court: Individual PAGA Payments, the LWDA PAGA Payment, Class and PAGA Representative Service Payments, Class/PAGA Counsel Fees Payment, Class/PAGA Counsel Litigation Expenses Payment, and the Administrative Expenses Payment."  (ECF No. 52-1 at 27).

[5] The Settlement Agreement defines the "PAGA Representative Payment" as "the payment to the PAGA Representative for initiating the PAGA Action and providing services in support of the PAGA Action."  (ECF No. 52-1 at 28).

Individual PAGA Payment: The Settlement Agreement defines the Individual PAGA Payment as the pro rata share of 25% of the PAGA Penalties, calculated according to the number of Workweeks worked during the PAGA Period. (*Id.*).

3.    Release of Claims:

Upon final judgment, each Plaintiff, Participating Class Member, and Aggrieved Employee will release all wage and hour claims and claims that they had, have, or thereafter may claim to have against the Released Parties[6] and that were asserted in the Class Action or that arise, or could have been asserted, based on "any of the facts, circumstances, transactions, events, occurrences, acts, disclosures, statements, omissions, or failures to act" alleged in the complaints, regardless of the source of law,[7] that occurred during the Class Period. (*Id.* at 33–34). The release does not include claims outside of the Class or PAGA periods, and do not extend to claims of harassment, retaliation, discrimination, workers' compensation, disability, wrongful termination, or unemployment benefits. (*Id.* at 34). Plaintiffs Estrada and De Leon additionally expressly waive their rights to unknown claims, under California Civil Code section 1542.[8] (*Id.*).

## II.    LEGAL STANDARD

Actions brought as class actions may only be settled with court approval. *See* Fed. R. Civ. P. 23(e). A court may approve a class action settlement if the court finds that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "The purpose of

---

[6] The Settlement Agreement defines Released Parties as "Denny's and each of its former, present, and future principals, agents, directors, officers, shareholders, owners, employees, employers, partners, successors, assignees, heirs, devisees, indemnitors, insurance companies, and attorneys." (ECF No. 52-1 at 28).

[7] The Settlement Agreement denotes violations of PAGA, specifically: "Labor Code sections: 201, 202–203, 204, 221–225.5, 226, 226.7, 510, 512, 558, 1174, 1194, 1197, and 2802, as well as IWC Wage Order No. 5, subdivisions 3, 5, 9, 11, and 12, during the PAGA Period." (*Id.* at 34).

[8] California Civil Code section 1542 provides: "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."

Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008) (citation omitted). Where the parties agree to a class settlement prior to formal class certification, "there is an increased risk that the named plaintiffs and class counsel will breach the fiduciary obligations they owe to the absent class members," and therefore such settlements "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Koby v. ARS Nat'l Servs., Inc.*, 846 F.3d 1071, 1079 (9th Cir. 2017) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)).

The commonly accepted procedure for court approval of a settlement involves two steps: (1) determining whether a proposed class action settlement should receive preliminary approval, and (2) reviewing the fairness of the settlement at a final fairness hearing. *See Salazar v. Midwest Servicing Grp., Inc.*, No. 17-CV-0137-PSG-KS, 2018 WL 3031503, at *4 (C.D. Cal. June 4, 2018). When reviewing a motion for preliminary approval, "a court determines whether a proposed settlement is within the range of possible approval and whether or not notice should be sent to class members." *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1063 (C.D. Cal. 2010) (internal quotations and citation omitted). "[I]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (quoting Manual for Complex Litigation, Second § 30.44 (1985)).). "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

Where the parties negotiate a settlement agreement before the class has been certified, "settlement approval requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019) (quoting *Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012)). Specifically, such settlement agreements must withstand "an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Id.* at 1048–49 (quoting *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 946). This scrutiny "ensure[s] that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent.'" *Id.* (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)).

## III. DISCUSSION

To assess this Motion, the Court must consider whether the proposed Class may be provisionally certified for settlement purposes only, evaluate the fairness, adequacy, and reasonableness of the proposed settlement, and review the adequacy of the proposed Amended Class Notice. The Court addresses each in turn.

### A. Conditional Class Certification

Under Rule 23(e)(1), the Court must direct notice to the class of a proposed settlement upon determining that notice is justified because the Court concludes it will likely be able to approve the settlement and certify the class for judgment on the settlement. When a plaintiff seeks conditional class certification, the court must ensure that the four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b) are met. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620–21 (1997); *Staton v. Boeing Co.*, 327 F.3d 938, 952–53 (9th Cir. 2003). Under Rule 23(a), the plaintiff must show the class is: (1) sufficiently numerous; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of those of the class; and (4) the representative parties will fairly and adequately protect the class' interests. Under Rule 23(b), the plaintiff must show that the action falls within one

of the three "types" of classes.  The Court begins its discussion with Rule 23(a), then addresses Rule 23(b).

          1.   <u>Rule 23(a) Requirements</u>

Plaintiffs submit that only Plaintiff Estrada is seeking to be approved as the Class Representative.  (ECF No. 52-1 at 12).  Thus, the Court considers only Plaintiff Estrada in its considerations of Rule 23(a).

          *i.*   *Numerosity*

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable."  A class satisfies the prerequisite of numerosity if it is so large that joinder of all class members is impracticable.  *Hanlon*, 150 F.3d at 1019.  To be impracticable, joinder must be difficult or inconvenient, but need not be impossible.  *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 522 (C.D. Cal. 2012) (citing Fed. R. Civ. P. 23(a)(1), *Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909, 913–14 (9th Cir.1964)).  "The numerosity requirement is not tied to any fixed numerical threshold," but "[i]n general, courts find the numerosity requirement satisfied when a class includes at least 40."  *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) (citing cases); *Woodard v. Labrada*, No. EDCV 16-00189 JGB (SPx), 2019 WL 4509301, at *4 (C.D. Cal. Apr. 23, 2019) (citing *Keegan*, 284 F.R.D. at 522).  Here, based on information provided to Plaintiffs by Defendant, there are currently a total of approximately 8,571 class members who worked for Defendant during the relevant period.  (ECF No. 52-1 at 6).  Thus, numerosity is satisfied here.  *See Rannis,* 380 F. App'x at 651.

          *ii.*   *Commonality*

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  The plaintiff must "demonstrate that the class members 'have suffered the same injury,'" which "does not mean merely that they have all suffered a violation of the same provision of law."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).  Instead, the plaintiff's claim must depend

on a "common contention" that is capable of class wide resolution. *Id.* at 350. This means "that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

Plaintiff asserts, and Defendant does not dispute, that the common factual and legal issues in this action include, among other allegations: (1) whether Defendant engaged in a common course of failing to provide and/or compensate employees for all hours worked, (2) provided all required meal and rest periods or compensation in lieu thereof; (3) whether the requirement that employees maintain and launder mandated uniforms required reimbursement by the employer and is compensable time; and (4) whether these alleged violations resulted in ancillary violations of California Labor Code Sections 203 and 226, as well as whether they justify relief under the UCL. (Mot. at 19; ECF No. 52-1 at 11–12). Plaintiffs also assert that Class Members commonly suffer from, and seek redress for, the same alleged injuries. (Mot. at 19; ECF No. 52-7 ("De Leon Decl.") ¶ 4; ECF No. 52-8 ("Estrada Decl.") ¶ 4). The Court agrees and, thus, finds the requirement of commonality satisfied. *See Dills v. Penske Logistics, LLC*, 267 F.R.D. 625, 633 (S.D. Cal. 2010) (finding commonality where plaintiffs identified "common factual questions," such as whether the defendants' "policies deprived the putative class members of meal periods, rest periods, overtime pay, and reimbursement for installation tool expenses, and common legal questions, such as [the] [d]efendants' obligations under [the] California Labor Code . . . .").

### iii.    Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Representative claims are "typical" if they are "reasonably co-extensive with those of the absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Courts have held that typicality and commonality requirements "tend to merge," and a finding of commonality ordinarily will support a finding of typicality. *Falcon*, 457 U.S. at 157 n.13; *see also Wehner v. Syntext Corp.*, 117 F.R.D. 641, 644 (N.D. Cal. 1987) ("If a court determines that a plaintiff's claim

1  is typical of the class, then by implication, the court has necessarily determined that

2  common questions exist.").

3      Plaintiff Estrada contends that her claims are typical of the class because "they arise

4  out of commonly applied employer policies and practices." (Mot. at 20; ECF No. 52-1 at

5  12). Specifically, the FAC alleges that Defendant maintained a policy and practice of

6  failing to pay all wages to all non-exempt hourly employees, including Plaintiff, for the

7  time that they were subjected to Defendant's control. *See* (FAC ¶¶ 25-43). In particular,

8  Defendant maintained a policy of requiring non-exempt employees to work during meal

9  and rest breaks and after they clocked out at the end of their shift, (ECF No. 52-1 at 18);

10  had a practice of "under staff[ing] restaurants" which created an alleged inability to relieve

11  employees for meal periods, (*id.* at 19; FAC ¶¶ 34–37); and required employees to launder

12  their own uniform but failed to reimburse the employee for such efforts, (ECF No. 52-1 at

13  20; FAC ¶ 38). Due to these policies and practices, Plaintiffs alleged that all persons who

14  are or have been employed by Defendant in California and have worked as a non-exempt

15  restaurant employee face the same labor violations and suffer from the same injury (i.e.,

16  unpaid wages). *See* (FAC ¶ 43); *Rivera v. Marriott Int'l, Inc*., Case No. 2:19-cv-05050-

17  ODW (KSx), 2023 WL 3766504, at *5 (C.D. Cal. June 1, 2023) (finding typicality satisfied

18  when the representative plaintiff "assert[ed] that [the defendant's] uniform pay, meal, and

19  rest policies applied to him, as well as all hourly employees," because plaintiff's "claims

20  share material common factual and legal issues with those of the potential Class, satisfying

21  typicality"). The typicality requirement is also satisfied.

### iv.   Adequacy of Representation

24      Finally, Rule 23(a)(4) requires that "the representative parties will fairly and

25  adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To satisfy

26  constitutional due process concerns, absent class members must be afforded adequate

27  representation before entry of a judgment which binds them." *Hanlon*, 150 F.3d at 1020.

28  To determine whether the adequacy prong is satisfied, courts consider the following two

questions: "(1) [d]o the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton*, 327 F.3d at 957 (citation omitted); *see also Fendler v. Westgate-California Corp.*, 527 F.2d 1168, 1170 (9th Cir. 1975) (noting that representative plaintiffs and counsel also must have sufficient "zeal and competence" to protect class interests).

There is no evidence of a conflict of interest between Plaintiff Estrada and the Plaintiff Class. (Mot. at 20). Additionally, Plaintiff Estrada contends that because she seeks the same relief as the Class, she will be able to adequately protect the interests of the entire class. (Estrada Decl. ¶¶ 8–9 (describing that she seeks, for example, "the same damages and remedies, specifically for unpaid wages, meal and rest period penalties, penalties for failure to provide accurate itemized wages statements[.]") FAC ¶¶ 25–41). Further, "Plaintiff['s] claims are identical to those of the class, and [thus,] [she has] every incentive to pursue those claims vigorously." *Fritsch*, 2021 WL 6881863, at *5. Plaintiff's counsel explains that Plaintiff has already "significantly contributed to the litigation process" and "vigorously pursued these claims on behalf of the class at substantial risk to herself," including: spending a "significant number of hours" searching for, producing, and reviewing documents in her possession; reviewing court filings and documents; speaking frequently with her attorneys to inform them of Defendant's policies and procedures; reviewing many versions of the settlement agreement and "conduct[ing] several conferences with Class Counsel" to discuss the settlement; finally, attending mediation. (Estrada Decl. ¶¶ 7–11). (*Id.* ¶ 9–10). Thus, the Court finds that Plaintiff Estrada has adequately represented the interests of the class.

The Court also finds that Class Counsel have extensive experience litigating wage and hour class/PAGA class actions and have appeared to diligently prosecute this action. (ECF No. 52-1 at 13–16). The Court notes that Attorney Katherine J. Odenbreit has over twenty-seven years of experience in civil litigation matters, and has extensive experience with class action employment litigation, including being appointed certified class counsel

for representative plaintiffs "in over 200 class actions/collective actions involving hu "numerous" wage and hour class actions. (*Id.* at 14). Class Counsel's firm also has extensive experience in class actions, including in representing parties as lead counsel in land-mark wage and hour cases. *See* (*id.* at 15; ECF No. 52-2; ECF No. 52-3). Thus, the Court concludes that the adequacy of representation requirement is satisfied. With all four requirements satisfied, the Court finds that the settlement Class satisfies Rule 23(a).

### 2. Rule 23(b)(3) Requirements

In addition to meeting the prerequisites of Rule 23(a), a proposed class must be appropriate for certification under one of the categories enumerated in Rule 23(b). Fed. R. Civ. P. 23(b); *Hanlon*, 150 F.3d at 1022. Here, Plaintiffs seek certification pursuant to Rule 23(b)(3). (Mot. at 31). To be certified under Rule 23(b)(3), the Court must find: (1) "that the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 957 (9th Cir. 2009) (quoting Fed. R. Civ. P. 23(b)(3)). "Settlement is relevant to a class certification." *Amchem*, 521 U.S. at 619. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, [ ]for the proposal that there be no trial." *Id.* (citing Fed. R. Civ. P. 23(b)(3)(D)).

#### i. Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022. "This analysis presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2); thus, the presence of commonality alone is not sufficient to fulfill Rule 23(b)(3)." *Id.* "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single

adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id.*

As discussed above, Plaintiff Estrada's allegations against Defendant raise common questions about Defendant's policies. The parties contend that "[t]hese common questions are the heart of the case, and they can be resolved in a single adjudication." (Mot. at 22); *see Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1436 (2013). "Class actions in which a defendant's uniform policies are challenged generally satisfy the predominance requirement of Rule 23(b)(3)." *Singh v. Roadrunner Intermodal Servs., LLC*, No. 1:15–cv–01497–DAD–BAM, 2018 WL 2412325, at *10 (E.D. Cal. May 29, 2018), *modified*, No. 1:15–cv–01497–DAD–BAM, 2018 WL 4382202 (E.D. Cal. Sept. 13, 2018) (citing cases). Here, Plaintiff Estrada and Class Members challenge Defendant's "uniform policies." *See id.* Thus, the Court finds the predominance factor satisfied.

### ii.    *Superiority*

"In resolving the Rule 23(b)(3) superiority inquiry, the court should consider class members' interests in pursuing separate actions individually, any litigation already in progress involving the same controversy, the desirability of concentrating the litigation in one forum, and potential difficulties in managing the class action, although the last two considerations are not relevant in the settlement context." *Singh*, 2018 WL 2412325, at *10 ; *see also Amchem*, 521 U.S. at 620.

Here, there are more than 8,500 Class Members. *See* (ECF No. 52-1 at 18). If those class members were to sue Defendant individually, each would bring essentially the same claims for relatively small sums and yet might have to expend substantial resources to cover litigation costs. In scenarios such as this, a class action is the preferred vehicle for such numerous claims, including because it will avoid burdening the court system. *Singh*, 2018 WL 2412325, at *11 ("A class action is superior in this instance to any other available method for adjudicating this controversy. The class consists of approximately 796 current and former drivers, which would burden the court system significantly if all class members

were to litigate their claims individually."). "Further, the approximate average hourly pay rate for class members is low, making it unlikely that class members would choose to pursue individual actions." *Id.* A class action is therefore superior to individual resolution of the claims.

Thus, Plaintiff has satisfied Rule 23(b)(3). With both Rule 23(a) and 23(b) satisfied, Plaintiff has shown certification of the class is appropriate for determining whether the settlement should be preliminary approved.

## B.    Preliminary Settlement Approval

Rule 23(e) requires a two-step process in considering whether to approve the settlement of a class action. First, a court must make a preliminary determination "whether the proposed settlement is fundamentally fair, adequate, and reasonable." *Staton*, 327 F.3d at 952. In evaluating fairness, a court must consider "the fairness of a settlement as a whole, rather than assessing its individual components." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818–19 (9th Cir. 2012). District courts often assess whether the settlement is the product of arms-length negotiations. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."). In determining whether preliminary approval is warranted, a court is to decide whether the proposed settlement has the *potential* to be deemed fair, reasonable, and adequate in the final approval process. *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. May 31, 2007).

A court is to consider and evaluate several factors, none of which is dispositive, as part of its assessment of a proposed settlement at both the preliminary and final approval processes. In particular, amended Rule 23(e) provides guidance as to the requisite considerations in evaluating whether a proposed settlement is fair, reasonable and adequate. *See Lim v. Transforce, Inc.*, Case No. LA CV19-04390 JAK (AGRx), 2022 WL 17253907, at *11 (C.D. Cal. Nov. 15, 2022) (noting that the comments of the Rules' Advisory Committee explain, "'[t]he goal of [the] amendment [was] not to displace any factor' that would have been relevant prior to the amendment, but rather to address

inconsistent 'vocabulary' that had arisen among the circuits and 'to focus the court and the lawyers on the core concerns' of the fairness inquiry." (quoting Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment)).  The amended Rule 23(e) requires a court to consider whether:

(A) the class representatives and Plaintiff's counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

### 1. Whether the Class Representatives and Plaintiffs' Counsel Have Adequately Represented the Putative Class:

For the reasons described above, Plaintiff Estrada and Class Counsel have adequately represented the class.  "The extent of the discovery conducted to date and the stage of the litigation are both indicators of [Class] Counsel's familiarity with the case and of Plaintiffs having enough information to make informed decisions." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008); *see also Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) (quoting 5 Moore's Federal Practice § 23.85[2][e] (Matthew Bender 3d ed.)) ("A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case.").

This class action was commenced on December 9, 2021. (ECF No. 1-1 ¶ 2; ECF No. 52-1 at 4). Class Counsel began written discovery after the Court entered a scheduling order on March 29, 2022. (ECF No. 22-1; ECF 52-1 at 5). On April 13, 2022, Defendant changed counsel and "soon thereafter" the parties agreed to schedule mediation for the class action as well as the DeLeon PAGA Action. (ECF No. 52-1 at 5; ECF Nos. 24, 30). On August 4, 2022, the Parties participated in a full day mediation with a "well regarded mediator, Hon. Carl West (Ret.)" who is "extremely familiar" with class actions related to labor disputes. (ECF No. 52-1 at 5). The Parties reached a settlement shortly after the mediation and spent the next few months exchanging settlement drafts. (*Id.*). The parties had begun to engage in formal discovery,[9] including serving written discovery requests. (*Id.* at 10).

Prior to mediation, Plaintiffs engaged "well-regarded experts to prepare a potential value model" assuming all claims would be certified. (*Id.* at 18). Class Counsel then estimated a reasonable value of the claims, discussed *infra*, by considering the strength of the claims, potential defenses, and any other legal or factual challenges. (*Id.* at 18–23). Plaintiffs contend settlement was only reached after "significant data, information and documents were exchanged . . . ." (Mot. at 25). Thus, while Class Counsel did not need to engage in extended litigation and discovery, Counsel did devote time, resources, and skill to the Class Action. *See Lim*, 2022 WL 17253907, at *11 ("The procedural history of the case shows that Class Counsel engaged in significant discovery, gathered material information about the scope and merits of the claims advanced, and were able to assess their value."). Thus, this factor weighs in favor of preliminary approval of the Settlement Agreement.

---

[9] The Court notes that Plaintiff DeLeon engaged in significant discovery efforts in the DeLeon Class Action and PAGA Action, including by sitting for deposition for a full day and completing written discovery. (ECF No. 52-1 at 10). Plaintiffs have not addressed whether these efforts in the separate actions, including a dismissed class action, should be considered by the Court for its fairness inquiry.

2.    <u>Whether the Settlement was Negotiated at Arm's Length</u>

"This circuit has long deferred to the private consensual decision of the parties." *Rodriguez*, 563 F.3d at 965.  The Ninth Circuit has "emphasized" that:

> the court's intrusion upon what is otherwise a private consensual agreement
> negotiated between the parties to a lawsuit must be limited to the extent
> necessary to reach a reasoned judgment that the agreement is not the product
> of fraud or overreaching by, or collusion between, the negotiating parties, and
> that the settlement, taken as a whole, is fair, reasonable and adequate to all
> concerned.

*Id*. (internal quotation marks omitted).  Three factors may raise concerns of collusion: (1) "when counsel receive[s] a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds"; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *In re Bluetooth*, 654 F.3d at 947 (internal quotation marks and citations omitted).  The Court takes each factor in turn.

First, the Settlement Agreement does not provide a disproportionate distribution of the settlement.  The Settlement Agreement provides for a Class Counsel payment of "not more than 33%" of the TSA, currently estimated to be $1,320,000.  (ECF No. 52-1 at 30). While, as discussed below, 33% of a common fund as payment to class counsel is a substantial payment, it can be approved and is not evidence of collusion.  *See, e.g.*, *Lim*, 2022 WL 17253907, at *12 ("The amount of attorney's fees and costs permitted in the Settlement Agreement – 33.33% of the Gross Settlement Amount – is substantial but not so disproportionate as to suggest collusion.");  *Razo v. AT&T Mobility Servs., LLC*, No. 1:20-CV-0172 JLT HBK, 2022 WL 4586229, at *10 (E.D. Cal. Sept. 29, 2022) ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the

total settlement value, with 25% considered the benchmark." (citing *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)).  Thus, this factor is satisfied.

However, the Settlement Agreement does contain a "clear sailing" arrangement.  A settlement agreement contains a "clear-sailing arrangement" when "the defendant agrees not to challenge a request for an agreed-upon attorney's fee," but the "mere presence of such an agreement is not 'an independent basis for withholding settlement approval.'" *Martinez v. Helzberg's Diamond Shops*, Case No. ED CV 20-1085 PSG (SHKx), 2021 WL 9181893, at \*7 (C.D. Cal. Sept. 24, 2021) (quoting *Briseño v. Henderson*, 998 F.3d 1014, 1027 (9th Cir. 2021)).  Here, the Settlement Agreement provides that Defendant "will not oppose requests for these [attorneys' fees] payments provided they do not exceed these amounts."  (ECF No. 52-1 at 30).  Thus, this weighs slightly toward inappropriate collusion, but is not dispositive in light of other factors.  *See Briseño*, 998 F.3d at 1022–23, 1027–28.

Finally, the Settlement Agreement is an "all-in" agreement, as in the Agreement provides that "[n]one of the Total Settlement Amount will revert to [Defendant]."  (ECF No. 52-1 at 30).  When a settlement agreement contains a "kicker" or "reverter" clause that returns unawarded fees to the defendant, rather than the class, that weighs toward a finding of class counsel self-interest.  *Briseño*, 998 F.3d at 1023.  Thus, because this Agreement does not contain any kicker or reverter clauses, this factor weighs in favor of a finding of arm's length negotiations.

Based on the above factors, the Court finds that the proposed settlement appears to be the product of serious, informed, non-collusive negotiations.  This finding weighs in favor of preliminary approval of the Settlement.

3.    Whether the Settlement Falls Within the Range of Possible Approval

The Court must consider whether the Settlement Agreement falls within the range of possible approval.  To determine whether a settlement "falls within the range of possible approval," a court must focus on "substantive fairness and adequacy," and "consider plaintiffs' expected recovery balanced against the value of the settlement offer."  *In re*

*Tableware Antitrust Litig.*, 484 F.Supp.2d at 1079–80. To do so, the Court evaluates each category of recovery set forth in the Settlement.

> ### i. Strength of Plaintiffs' Claims, and Costs, Risks, and Delays of Trial and Appeal

It is "well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice*, 688 F.2d at 628. "Estimates of a fair settlement figure are tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)." *In re Toys "R" Us–Delaware, Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453 (C.D. Cal. 2014); *see also Rodriguez,* 563 F.3d at 965. When considering "the costs, risks, and delay of trial and appeal," Fed. R. Civ. P. 23(e)(2)(C)(i), courts in the Ninth Circuit evaluate "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial." *Hanlon*, 150 F.3d at 1026; *see also Musgrove v. Jackson Nurse Pros., LLC*, No. CV 17-6565 FMO (SSX), 2022 WL 18231364, at *5 (C.D. Cal. June 24, 2022). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Reed v. Bridge Diagnostics, LLC*, Case No. 8:21:cv-01409-CJC-KES, 2023 WL 4833461, at *6 (C.D. Cal. July 27, 2023).

Plaintiff contends that the Total Settlement Amount of four million dollars is a "reasonable and appropriate" result considering the "inherent risk of litigation, the risk of class certification and costs of litigation." (Mot. at 25). Class Counsel also estimated the "reasonable potential value of Plaintiffs' case." (ECF No. 52-1 at 18–23). Class Counsel estimated the reasonable evaluation of all the class claims to be approximately $9,035,921.25. (*Id.* at 22). Thus, Class Counsel asserts that the TSA represents 44% of

the reasonable potential value. (*Id.* at 22).[10]  As described more below and in Class Counsel's Declaration, (ECF No. 52-1 at 18–23), Class Counsel undertook an analysis to consider the full value of each claim, reduced by the possible defects in the claims.

As to unpaid wages, Plaintiffs originally valued these claims to be approximately $9,074,992.00, "assuming 3 hours per employee per workweek." (*Id.* at 18).  However, Counsel reduced the likely recovery by 70%, resulting in an estimated value of $2,722,497.60, because proving this claim on a class-wide basis would have presented both legal and practical challenges, including gathering costly data from Defendant, hours of expert analysis and examination, both of which may have equaled costs of "over $100,000." (*Id.* at 19).

As to the meal period claims, the records show approximately a 50% violation rate that would have possibly resulted in a recovery of $187,601. (*Id.*).  However, Class Counsel estimated a 40% reduction in these claims because of Defendant's likely defense that any short, late, or missed meal period was "voluntary" in light of Defendant's "facially valid" written meal period policies. (*Id.*).  Thus, Counsel estimates the value of these claims to be $112,560.

Plaintiff's rest break allegations were initially valued at $13,787,664 based on a 75% violation rate. (*Id.* at 19–20).  However, because Defendant has a written legally compliant policy, and the alleged violations are based on Class Member information, raising burdensome practical issues, Class Counsel reduced the value of these claims by 75% to approximately $3,446,916. Class Counsel also estimates the reasonable value of the uniform maintenance claims to be $335,557.50 (reduced from $711,115 by 50%) because proving such violations would require deposing a "statistically significant" number of Class Members. (*Id.* at 20–21).

---

[10] The Court questions whether Class Counsel's calculation using only the class claims value, without the PAGA claims, is relevant, given that the $4 million in TSA includes the PAGA allocation.  If the Court takes the lower of Counsel's estimated reasonable value of the PAGA claims together with the value of the class claims, the TSA constitutes 28% of the value of all claims.

A reasonable value of the wage claims is estimated to be $966,190.75. The estimate is based on a balancing of the value of the assumption that a violation occurred each pay period, against a reduction in value due to documentary evidence issues and uncertainty as to the number of Class Members' whose recovery would be capped by a $4,000 maximum penalty. (*Id.* at 21). And, though Class Counsel estimated a 100% violation rate regarding the Labor Code section 203 waiting time penalties (assuming that all Class Members were not compensated "for at least one meal period violations, rest period violations, or off-the-clock hours worked during their employment), Class Counsel found the reasonable estimate of these claims to be $1,432,199.40 ("30% of the maximum exposure) due to legal uncertainties, including that these claims would depend on liability for the unpaid wages claim and because Defendants would assert defenses that could possibly preclude waiting time penalty awards. *See* (*id.* at 21–22).

As to the PAGA claims' value, Class Counsel estimates that the value of these claims amounts to $18,957,794, but acknowledges that a court-awarded penalty of that amount is unlikely. (*Id.*). Further, Class Counsel states that the law regarding whether Plaintiffs can seek a certain penalty, the "$200 subsequent violation penalty," is unsettled or, at minimum, not guaranteed to result. *See* (*id.* at 22–23 (citing cases)). Thus, Class Counsel acknowledges that recovery would more realistically be about five to seven million. (*Id.* at 23).

The Court finds that Plaintiffs have sufficiently identified the  risks and costs with proceeding in litigation, rather than settling. While $4 million is a fraction of the estimated value of each of the claims, the immediacy of the recovery and the certainty with which Class Members will be able to recover justify preliminary approval. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." (internal quotation marks omitted)). Thus, this factor weighs in favor of preliminary approval.

4.     Obvious Deficiencies

The Court also considers whether there are obvious deficiencies in the Settlement Agreement.  In the Court's view, there are three potentially problematic aspects of the Agreement, two of which preclude preliminary approval.

*i.     PAGA Allocation*

Under PAGA, "an 'aggrieved employee' may bring a civil action personally and on behalf of other current or former employees to recover civil penalties for Labor Code violations." *Villacres v. ABM Indus. Inc.*, 117 Cal. Rptr. 3d 398, 411 (Cal. Ct. App. 2010) (quoting *Arias v. Superior Ct.*, 209 P.3d 923, 930 (Cal. 2009)) (internal quotation marks omitted).  "[T]he state is the real party in interest, and the action is 'fundamentally a law enforcement action designed to protect the public and not to benefit private parties.'" *Gonzalez v. CoreCivic of Tenn., LLC*, No. 1:16-CV-01891-DAD-JLT, 2018 WL 4388425, at *7 (E.D. Cal. Sept. 13, 2018) (citation omitted)).  PAGA provides that a plaintiff may seek penalties of one hundred dollars ($100) per aggrieved employee, per pay period, for an initial Labor Code violation, and two hundred dollars ($200) for each subsequent violation per aggrieved employee,[11] per pay period.  Cal. Lab. Code § 2699(f)(2).

District courts have approved PAGA settlements when the "relief provided for under the PAGA [is] genuine and meaningful, [and] consistent with the underlying purpose of the statute to benefit the public." *O'Connor v. Uber Techs., Inc*., 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016) (quoting Labor & Workforce Development Agency Resp. at 2–3). "[I]n evaluating the adequacy of a settlement of a PAGA claim, courts may employ a sliding scale, taking into account the value of the settlement as a whole." *Viceral v. Mistras Grp., Inc.*, No. 15-CV-02198-EMC, 2016 WL 5907869, at *9 (N.D. Cal. Oct. 11, 2016). "[W]here a settlement for a Rule 23 class is robust, the statutory purposes of PAGA may be fulfilled even with a relatively small award on the PAGA claim itself." *Id.*

---

[11] Plaintiff states that the law surrounding subsequent violation penalties is unsettled as to "when or if [p]laintiffs can seek" this penalty.  *See* (ECF No. 52-1 at 22–23).

As described more fully above, Class Counsel estimates the value of the PAGA claims to be $18,957,794. (ECF No. 52-1 at 22). Yet, the Settlement only allocates $50,000 for a PAGA payment out of the TSA, which constitutes approximately 1.25% of the TSA. *See* (ECF No. 52-1 at 22 (citing cases)).

Class Counsel argues that this discount to $50,000 for the PAGA claims is justified, first because a court would be unlikely to award a civil penalty in the range of its estimated value including because Defendants would oppose such a large award on multiple bases. *See* (*id.* at 22–23). Class Counsel also argues that, if the LWDA does not object to the settlement, the settlement should be considered presumptively reasonable. *See* (*id.* at 23 (citing *Mancini v. Western & Southern Life Ins. Co.*, Case No. 16cv2830-LAB (WVG), 2018 WL 4489590, at *2, (S.D. Cal., Sept. 18, 2018)). Finally, it is typical for a PAGA allocation in a settlement agreement to be 1% or less of the settlement amount. *See* (ECF No. 52-1 at 23 (citing cases)).

At the hearing on the Motion, the Court probed whether the allocation was appropriate and questioned whether the PAGA allocation in this case was just a bargaining chip. Class Counsel represented that it is "very common" for courts to "severely reduce" the amount of PAGA claims at trial. Class Counsel also explained that, while plaintiff's attorneys often "stack" penalties (*i.e.*, combine the $100 violation for the first pay period violation and the $200 subsequent violation penalty, as described above), federal courts have started to question whether stacking is appropriate. Finally, Class Counsel represented that, based on her extensive experience, courts often "struggle" with PAGA judgments that impose "huge penalties against employers."

The Court preliminarily approves the PAGA allocation of the Settlement. The Court is persuaded that the reductions to the PAGA allocation is fair and reasonable, at this stage, because the reductions are based on a close evaluation of the value of the PAGA claims, an awareness of unsettled law, and experience in litigating PAGA claims. However, the Court notes one possible weakness that may counsel against final approval, if not addressed. In the Motion, Plaintiffs do not cite or address recent decisions from other

district courts that perform a highly fact-specific view of the case to determine whether the reduction of PAGA recovery is justified, or whether it evidences that the parties are using their PAGA claims as a "mere bargaining chip[.]" *Viceral,* 2016 WL 5907869, at *9; *O'Connor*, 201 F. Supp. 3d at 1134.[12]  Those courts consider, among other things, how much of the *verdict* value is attributable to the PAGA claims, *see O'Connor*, 201 F. Supp. 3d at 1134 (comparing a $1 million PAGA allocation in settlement compared to an estimated $1 billion verdict), and how far reduced the PAGA allocation is in settlement compared to the balance of the PAGA claims against "the total potential verdict value of all claims, *Viceral,* 2016 WL 5907869, at *9 (noting that "the potential value of the PAGA claim in the instant case represents only about 14% of the total potential verdict value of all claims," which was more fair than in cases where "the PAGA claim represented over 50% of the potential verdict").  At final approval, Plaintiffs should address these more recent cases.

The Court approves the PAGA allocation under the TSA for purposes of preliminary approval.

### ii.    PAGA Plaintiff Payment

The Settlement also provides that Plaintiffs will seek approval of a Service Payment of $5,000.00 for Plaintiff Estrada as Class Representative and Plaintiff DeLeon as "PAGA Representative."  (Mot. at 28–29; ECF No. 52-1 at 6, 30).  "[D]istrict courts [should]

---

[12] Plaintiffs cite to several cases that have approved allocations that equal less than 1% of the total settlement amounts, though the Court notes that most of these decisions summarily approve the PAGA allocation without discussion, are only persuasive authority, and are over ten years old.  *See Hicks v. Toys 'R' Us–Delaware, Inc.,* 2014 WL 4703915, at *1 (C.D. Cal. Sept. 2, 2014) (approving settlement without discussing propriety of PAGA allocation); *Chu v. Wells Fargo Invs., LLC*, 2011 WL 672645, at *1 (N.D. Cal. Feb. 16, 2011) (same); *Garcia v. Gordon Trucking*, 2012 WL 5364575, at *7 (E.D. Cal. Oct. 31, 2012) (noting only that the PAGA allocation "comports with settlement approval of PAGA awards in other cases"); *Franco v. Ruiz Food Prods., Inc*., 2012 WL 5941801, at *14 (E.D. Cal. Nov. 27, 2012) (same).

scrutinize carefully [incentive] awards so that they do not undermine the adequacy of the class representatives." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013).  In evaluating such awards, courts should look to "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947 (9th Cir. 2015) (quoting *Staton*, 327 F.3d at 977).  "Generally, in the Ninth Circuit, a $5,000 incentive award is presumed reasonable." *Bravo v. Gale Triangle, Inc.*, No. CV 16-03347 BRO (GJSx), 2017 WL 708766, at *19 (C.D. Cal. Feb. 16, 2017) (citing *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012)).

The Court grants preliminary approval of the service award for Plaintiff Estrada.  As previously discussed, Plaintiff Estrada has undertaken several efforts in the prosecution of this action, including attending mediation and consistently assisting Class Counsel.  *See* ("Estrada Decl.").  Though the Ninth Circuit has not set a benchmark, many district courts in this Circuit treat $5,000 incentive awards to be reasonable.  *See Smith v. Am. Greetings Corp.*, No. 14-CV-02577-JST, 2016 WL 362395, at *10 (N.D. Cal. Jan. 29, 2016); *see also Odrick v. UnionBancal Corp.*, No. C 10-5565 SBA, 2012 WL 6019495, at *6–7 (N.D. Cal. Dec. 3, 2012) (granting an award of $5,000 to plaintiff prosecuting a wage and hour class action).  Thus, the service award to Plaintiff Estrada is within the range of possible approval.

However, Plaintiffs have not adequately justified whether a $5,000 service payment to De Leon, the "PAGA Representative" is justified.  The Court is not aware of any case law analyzing whether a PAGA Plaintiff is justified to a service payment without finding under Rule 23 that the plaintiff is representative of the class, specifically whether the named plaintiff's claims are typical of the class and whether she has adequately protected the class's interest.  *See Jones v. Bath & Body Works, Inc.,* Case No. CV 13-5206 FMO (AJWx), 2016 WL 11755017, at *5 n.6 (C.D. Cal. Feb. 16, 2016) (discussing an incentive award to one named plaintiff for her work in prosecuting the PAGA claims, but also noting

that the analysis "treats Jones and Johnson as the representative plaintiffs in its analysis of the requirements of class certification under Rule 23"); *Singh*, 2018 WL 2412325, at *9 (questioning whether "named plaintiffs and their counsel [would] prosecute the action vigorously on behalf of the class" (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000)). At the hearing on the Motion, Class Counsel acknowledged that she was unaware of any case law specifically justifying the PAGA plaintiff incentive award.

Therefore, because Plaintiffs have provided no authority justifying such an award, nor provided any basis or analysis for "appoint[ing] [Plaintiff] De Leon as PAGA Representative," (Mot. at 14), Plaintiffs have not demonstrated that Plaintiff De Leon's service award is within the possible range of recovery. The Court denies preliminary approval of Plaintiff De Leon's requested incentive award.

### iii.    Counsel's Fees

The Settlement provides that Class Counsel may seek attorneys' fees of up to one-third, or $1,320,000 of the TSA. *See* (ECF No. 52-1 at 6, 30–31). "While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement . . . courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941. Twenty-five percent recovery is the benchmark for attorneys' fees, although courts in the Ninth Circuit have found upward departures to fall within the acceptable range. *See id.* at 942 (noting 25% benchmark); *Powers v. Eichen*, 229 F.3d 1249, 1256–57 (9th Cir. 2000) (upward departure acceptable when expressly explained); *see also Razo*, 2022 WL 4586229, at *10 ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark.") (citing *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)). Further, "[w]here a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth*, 654 F.3d at 942.

As previously discussed, Class Counsel is experienced in class actions, in particular wage and hour class actions. And while the Settlement Agreement provides for an upward departure from the Ninth Circuit's benchmark, the proposed fees request still falls within the *possible* range of possible approval. *See Shahbazian v. Fast Auto Loans, Inc.*, No. 2:18-cv-03076-ODW, 2019 WL 8955420 at *9 (C.D. Cal. June 20, 2019) (finding request of one-third attorneys' fee to be reasonable for purposes of preliminary approval of settlement). The Court also finds that Counsel's request for costs, approximately $30,000.00, to also be reasonable. Thus, preliminary approval of the requested fee is appropriate, though the Court notes that Class Counsel will need to justify the upward departure from the Ninth Circuit benchmark at the final approval stage. *See Elliott v. Rolling Frito-Lay Sales, LP*, No. SACV 11-01730 DOC, 2014 WL 2761316, at *6–7, 10 (C.D. Cal. June 12, 2014) (awarding a 30% fee award to compensate counsel for taking on difficult legal issues, including "novel legal issues" that were "compounded" by complex factual circumstances); *Bower v. Cycle Gear, Inc*, No. 14-CV-02712-HSG, 2016 WL 4439875, at *7 (N.D. Cal. Aug. 23, 2016) (awarding 30% when counsel had litigated the case for more than several hundred billable hours and "[t]he average recovery for California Class Members is approximately $1,250.12").

### 5. Preferential Treatment

The Court also considers whether the Settlement Agreement treats the putative class members equitably relative to each other or whether the settlement agreement provides preferential treatment to any class member. *See* Fed. R. Civ. P. 23(e)(2)(D); *see also Lim*, 2022 WL 17253907, at *14; *Massey v. Star Nursing, Inc.*, No. 21-CV-01482-EJD, 2023 WL 2214173, at *6 (N.D. Cal. Feb. 23, 2023)

The proposed Settlement does not improperly grant preferential treatment to Plaintiff Estrada, the Class Representative.[13] Other than the Class Representative Service Payment,

---

[13] The Court notes again that Plaintiffs do not appear to assert that Plaintiff DeLeon should be considered within this analysis. *See* (Mot. at 27).

*see* (ECF No. 52-1 at 30), the Settlement places Plaintiff Estrada on equal footing with other Class Members.  Further, because the individual payments will be issued on a *pro rata* basis (based on their workweeks), the Settlement also does not show preferential treatment to any segment of the Class.  *See* (*id.* at 31).  Issuing individual awards on a *pro rata* basis is a method is common in wage-and-hour class cases.  *See, e.g.*, *Cicero v. DirecTV, Inc.*, No. EDCV 07-1182, 2010 WL 2991486, at *5 (C.D. Cal. July 27, 2010) ("[T]he fund will be distributed based on the number of weeks worked by each class member, which appears to be a fair method of distributing the fund."); *Lim*, 2022 WL 17253907, at *14 ("Providing a larger payment to drivers who worked more weeks is reasonable in that they would have worked more hours and sustained more of the alleged damages."); *Pierce v. Rosetta Stone, Ltd.*, No. 11-01283 SBA, 2013 WL 1878918, at *6–7 (N.D. Cal. May 3, 2013); *Altamirano v. Shaw Indus., Inc.*, No. 13-cv-00939, 2015 WL 4512372, at *8 (N.D. Cal. July 24, 2015) (finding no preferential treatment because the settlement "compensates class members in a manner generally proportionate to the harm they suffered on account of [the] alleged misconduct.").

Thus, this factor weighs in favor of preliminary approval.

### C.    Release of Claims

The Court next considers whether the Settlement Agreement contains an overly broad release of liability.  *See* 4 Newberg on Class Actions § 13:15, at p. 326–27 (5th ed. 2014) ("Beyond the value of the settlement, courts have rejected preliminary approval when the proposed settlement contains obvious substantive defects such as . . . overly broad releases of liability."); *Hadley v. Kellogg Sales Co*., No. 16-CV-04955-LHK, 2020 WL 836673, at *2 (N.D. Cal. Feb. 20, 2020) (finding the issue of whether a release is overly broad to be "sufficient to deny the motion for preliminary approval").

"A settlement agreement may preclude a party from bringing a related claim in the future 'even though the claim was not presented and might not have been presentable in the class action,' *but only* where the released claim is 'based on the identical factual predicate as that underlying the claims in the settled class action.'" *Hesse v. Sprint Corp*., 598 F.3d 581, 590 (9th Cir. 2010) (quoting *Williams v. Boeing Co*., 517 F.3d 1120, 1133

(9th Cir. 2008) (emphasis added)).  "Put another way, a release of claims that 'go[es] beyond the scope of the allegations of the operative complaint' is impermissible." *Lovig v. Sears, Roebuck & Co*., No. EDCV 11-00756-CJC, 2014 WL 8252583, at *2 (C.D. Cal. Dec. 9, 2014) (quoting *Willner v. Manpower Inc*., No. 11–CV–02846–JST, 2014 WL 4370694, at *7 (N.D. Cal. Sept. 3, 2014)).  Therefore, "[d]istrict courts in this Circuit have declined to approve settlement agreements where such agreements would release claims based on different facts than those alleged in the litigation at issue." *Chavez v. PVH Corp*., No. 13–CV–01797–LHK, 2015 WL 581382, at *5 (N.D. Cal. Feb. 11, 2015).'

Here, the release of claims appears to be fair because the release is limited to claims that could have been asserted in this action.  *See* (ECF No. 52-1 at 33–34); *Bendon v. DTG Operations, Inc*., Case No. ED CV 16-0861 FMO (AGRx), 2018 WL 6265059, at *10 (C.D. Cal. Feb. 27, 2018).  Further, the release of claims expressly excepts labor violation claims not at issue in this case: "This release does not include claims outside the Class or PAGA Periods or claims of harassment, retaliation, discrimination, workers' compensation, disability, wrongful termination or unemployment benefits." (ECF No. 52-1 at 34); *cf. O'Connor*., 201 F. Supp. 3d at 1119 (disapproving of the settlement's "release [of] all claims based on or reasonably related to the employment misclassification claim, *i.e*., overtime, minimum wage, meal and rest breaks, and workers' compensation" even though they were not at issue in the action).

Thus, the Court finds that this release "adequately balances fairness to absent class members and recovery for plaintiffs with defendant's business interest in ending this litigation." *Bendon,* 2018 WL 6265059, at *10 (citing *Fraser v. Asus Computer Int'l*, 2012 WL 6680142, *4 (N.D. Cal. 2012).

### D.    Settlement Administrator Fee

The estimated cost of administering this settlement is "not to exceed" $50,000.  (ECF No. 52-1 at 31).  This estimate is consistent with, and sometimes lower than, other settlement submitted to district courts in this Circuit.  *See, e.g.*, *Aguilar v. Wawona Frozen Foods*, No. 1:15-cv-00093-DAD-EPG, 2017 WL 117789, at *6–7 (E.D. Cal. Jan. 11, 2017)

(administration costs of $45,000 for a $4.5 million settlement); *Del Castillo v. Cmty. Child Care Council of Santa Clara Cty., Inc.*, Case No. 17-cv-07243-BLF, 2021 WL 4895084, at *7 (N.D. Cal. Oct. 20, 2021) (approving $10,000 Settlement Administrator Fee for $317,500 gross settlement); *Lusk v. Five Guys Enters. LLC*, No. 1:17-cv-00762-AWI-EPG, 2022 WL 4791923, at *9 (E.D. Cal. Sept. 30, 2022) (administration costs of $30,000 for a $1.2 million settlement); *Razo*, 2022 WL 4586229, at *16–17 (administration costs of $30,000 for a $575,000 settlement); *Dakota Med., Inc. v. RehabCare Grp., Inc.*, No. 1:14-cv-02081-DAD-BAM, 2017 WL 1398816, at *5–6 (E.D. Cal. Apr. 19, 2017) (administration costs of $94,000 for a $25 million settlement).  Thus, the Court finds the proposed Settlement Administrator Fee to be reasonable.

Based on all the above, the Court grants preliminary approval of the proposed Settlement Agreement, except as to the PAGA Plaintiff service payment.

### E.    Sufficiency of Notice

To find notice to absent class members sufficient, the Court analyzes both the type and content of the notice.  After reviewing the Notice, the Court finds the type and content of the notice to be sufficient.

#### 1.    Type of Notice

"[T]he court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  For class action settlements, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B).

Defendant agrees to provide the Settlement Administrator, no later than 15 calendar days following preliminary approval by this Court, "Class Data" compiled based on Defendant's records setting forth each Class Members': (1) full name; (2) last known mailing address; (3) social security numbers; and (4) total number of work weeks worked during the Class Period and PAGA Pay Period.  (Mot. at 30; ECF No. 52-1 at 32, 35–36).  The Settlement Administrator will perform a search on the U.S. Postal Service National

Change of Address Database and update any addresses with any new information regarding the location of Class Members. *See* (*id.* at 35–36). Within 14 calendar days of receiving the Class Data, the Settlement Administrator will send via first class mail the Court-approved Notice of Settlement to each Class Member. (*Id.*). Not later than seven calendar days after the Settlement Administrator's receipt of any Class Notice returned by the USPS as undelivered, the Administrator will re-mail the Class Notice using any forwarding address provided by the USPS. (*Id.* at 36). If the USPS does not provide a forwarding address, the Administrator will conduct a Class Member Address Search, and re-mail the Class Notice to the most current address obtained. (*Id.*). The Court finds the procedures for notice sufficient and the most practicable under the circumstances. *See Bendon*, 2018 WL 6265059, at *12.

###### 2.    Content of Notice

Class notice must state:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii). "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal quotation marks omitted). The notice "does not require detailed analysis of the statutes or causes of action forming the basis for the plaintiff class's claims, and it does not require an estimate of the potential value of those claims." *Lane*, 696 F.3d at 826.

The proposed Class Notice is attached as Exhibit A to the Settlement. (ECF No. 52-1 at 45–52). The Class Notice provides information on the meaning and nature of the proposed Class, *see* (*id.* at 46); the terms and provisions of the Settlement and the relief

that the Settlement will provide to Participating Class Members, *see* (*id.* at 46–48); the application of Plaintiff for her Service Payment and of Class Counsel's for their attorneys' fees and costs, *see* (*id.* at 48–49); the payment to the LWDA of its share of the PAGA Payment, (*id.* at 49); the payment of the Settlement Administration Costs, (*id.* at 48); indicates that it will include the date, time, and place of the final settlement approval hearing, (*id.* 38–39); and the procedure and deadlines for opting out of the Settlement or for submitting objections to the Settlement, (*id.* at 50).

If a Class Member chooses to object to the Settlement, they will have 30 days to file with the Court and serve an Objection to the Agreement. (*Id.* at 38). Further, Class Members that choose to opt out of the Settlement will have 30 days from the mailing of the Class Notice to postmark a Request for Exclusion from the Settlement. (*Id.* at 36).

The Court also finds that the contents of the Class Notice are sufficient. *See Churchill Vill.*, 361 F.3d at 575 ("Under the circumstances, we are satisfied that the notice approved by the district court provided 'absent class members ... with the opportunity to opt-out and individually pursue any state law remedies that might provide a better opportunity for recovery.'" (quoting Hanlon, 150 F.3d at 1025)); *see also Bendon*, 2018 WL 6265059, at *12.

## IV.    CONCLUSION

For the Foregoing reasons, the Court ORDERS the following:

1.    The Unopposed Motion for Preliminary Approval of Class Settlement is DENIED, insofar as it requests a PAGA service award; the Motion is otherwise GRANTED;

2.    The Court preliminarily certifies the class, as defined in the Settlement Agreement, (ECF No. 25–26), for purposes of settlement;

3.    For settlement purposes only, the Court hereby appoints: (

    a)    Plaintiff Maria Estrada as the Class Representative;

    b)    Kevin Mahoney, Katherine J. Odenbreit, and Raleigh Dixon of Mahoney Law Group as Class Counsel; and

    c)    Phoenix Class Action Administrators__as the Settlement Administrator; and

4.    A Final Approval Hearing shall be held on May 29, 2024, at 3:00 p.m. in the United States District Court, Central District of California, Courtroom 5C, located at 350 W. 1st Street, Los Angeles, California, 90012.

**IT IS SO ORDERED.**

Dated: March 1, 2024

_____

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE

-35-