JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA ESTRADA, as individuals and on behalf of all similarly situated employees,<br><br>Plaintiff,<br><br>v.<br><br>DENNY'S INC., and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:22-CV-00572-SPG (AGRx)<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MOTIONS FOR ATTORNEYS' FEES**<br>**[ECF Nos. 61–62]** |

Before the Court is Plaintiff Maria Estrada and Representative Plaintiff Myra De Leon's (collectively, "Plaintiffs") Motion for Final Approval of Class Action Settlement and Setting of Final Approval Hearing ("Motion"), (ECF No. 61 ("Mot.")), and Motion for Attorneys' Fees ("Fees Motion"), (ECF No. 62). Having considered Plaintiffs' submissions, arguments at the hearing, the relevant law, and the record in this case, the Court GRANTS the Motion.

# I.    BACKGROUND

## A.    Plaintiffs' Allegations

The proposed settlement arises out of the following allegations:

Plaintiff Estrada and Plaintiff De Leon both worked as hourly, non-exempt employees for Denny's in one of Denny's California locations.  (ECF No. 38 ("FAC") ¶¶ 13–15).  Plaintiff Estrada began her employment with Defendant in 2009 and left Defendant's employment on or about March 18, 2020.[1]  (*Id.* ¶ 13).  Plaintiff Estrada worked as a line cook at a Defendant location in Los Angeles, California.  ECF No. 52-8 ("Estrada Decl.") ¶ 3.  Plaintiff De Leon began her employment with Defendant in 2014 as a waitress at a Defendant location in Hollywood, California, and left in October 2019.  (FAC ¶ 14; ECF No. 52-7 ("De Leon Decl.") ¶ 3.  Each member of the class of plaintiffs in this class action is also a current and/or former similarly situated person employed by Defendant as a non-exempt employee (the "Class") during the period extending from December 9, 2017, to August 4, 2022 (the "Class Period").  *See* (FAC ¶ 1; ECF No. 61-1 at 15).

Plaintiffs allege Defendants failed to pay the Class for all hours worked; refused to permit the Class to take rest periods, or legally compliant meal periods, or provide compensation in lieu of the entitled periods; refused to furnish to the Class itemized wage statements upon payment of wages; refused to compensate Plaintiff Estrada and some members of the Class wages due at the time of employment conclusion; failed to reimburse the Class for necessary business expenditures; and failed to provide schedules so as to reasonably ensure employees took timely rest and meal periods.  *See, e.g.*, (FAC ¶¶ 5, 35).  According to the First Amended Complaint ("FAC"), Defendant had a policy and practice of not paying Plaintiff Estrada and the Class for all hours worked by requiring its employees to work off-the-clock, including by: requiring employees to perform work duties before and after clocking in for their first regularly scheduled shift, requiring employees to work during rest and meal periods when they were otherwise "ostensibly

---

[1] Plaintiff Estrada represents in her accompanying declaration that her employment ended on approximately December 9, 2019.  (ECF No. 52-8 ("Estrada Decl.") ¶ 3.

'duty-free,'" and requiring employees to wear a clean garment before each shift but failing to reimburse employees. (*Id.* ¶¶ 27–41).

### B.    Procedural Background

On October 16, 2019, Plaintiff De Leon submitted to the State of California's Labor Workforce Development Agency ("LWDA") a Notice of Labor Code Violations by Defendant. (*Id.* ¶ 10). On June 2, 2020, Plaintiff De Leon brought a Private Attorney General Act ("PAGA") representative action against Defendant for violations of the California Labor Code and applicable Industrial Welfare Commission ("IWC") Wage Orders on behalf of the State of California and all hourly, non-exempt, aggrieved employees that worked at a California location of Defendant (the "PAGA Action"). (ECF No. 52-1 at 2–3). The PAGA Action involved allegations that sought civil penalties for the following Labor Code violations: Sections 210-204, 221-225.5, 226, 510, 512, 558, 1174, 1194 and 1197 and 2802. (*Id.* at 3).

On December 9, 2021, Plaintiff Estrada filed this class action in California Superior Court ("Estrada Class Action"). (*Id.*). The Complaint asserted the following violations of the California Labor Code: (1) failure to pay all wages due, including overtime wages (Sections 510, 1194 and IWC Wage Order 5-2001, July 1, 2002, *as amended*, Sections 3 and 5); (2) failure to provide legally compliant meal periods or pay a penalty in lieu thereof (Sections 226.7, 512 and IWC Wage Order 5-2001, July 1, 2002, *as amended,* Section 11); (3) failure to provide legally compliant rest periods or pay a penalty in lieu thereof (Section 226.7 and IWC Wage Order 5-2001, July 1, 2002, *as amended*, Section 12); (4) failure to provide accurate itemized wage statements and maintain accurate employee records (Sections 226 subd. (a), 1174, and 1175); (5) failure to pay all wages due to employee at separation of employment (Sections 201-203); and (6) failure to reimburse employees necessary business expenditures (Section 2802). *See* (ECF No. 1).

On January 26, 2022, Defendant removed the Estrada Class Action to federal court. (ECF No. 1). On August 4, 2022, the parties participated in a full day mediation with Hon. Carl West (Ret.) and reached settlement shortly thereafter. (ECF No. 61-2 ("Odenbreit

Decl.") ¶ 4).  On May 12, 2023, pursuant to the terms of the agreement entered into by the parties ("Settlement Agreement"), the parties submitted a stipulated request for leave to file an amended complaint to add Plaintiff De Leon and the PAGA Action to the Estrada Class Action, which the Court granted on May 15, 2023.[2]  (ECF No. 36 at 3; ECF No. 37).  On May 16, 2023, the FAC was filed, which included the newly-asserted PAGA claim.  *See* (FAC ¶¶ 99–105).  The PAGA Action was apparently dismissed in state court.  (ECF No. 52-1 at 4).

On October 27, 2023, Plaintiffs filed a motion for preliminary approval of the Settlement Agreement, and the Court heard oral argument on November 29, 2023.  (ECF No. 52).  On March 1, 2024, the Court granted preliminary approval of the Settlement Agreement, except as to Plaintiffs' request for a service award for Plaintiff De Leon as the PAGA representative; preliminarily certified the Class for purposes of settlement (the "Settlement Class");[3] appointed Kevin Mahoney, Katherine Odenbreit, and Raleigh Dixon of Mahoney Law Group as Class Counsel; and appointed Phoenix Class Action Administrators as the Settlement Administrator.  *See* (ECF No. 58 ("Prelim. Order")).

On May 28, 2024, Plaintiffs filed the present Motion for Final Approval and Fees Motion, (collectively, "Motions").  (Mot.; ECF No. 62 ("Fees Mot.")).  While Defendant filed a notice of non-opposition to the Motion, (ECF No. 65), Defendant has not filed any opposition to the Fees Motion.  The Court held a final approval hearing on June 26, 2024.

### C.    The Settlement Agreement

Pursuant to the Settlement Agreement, Defendant agrees to pay a settlement amount as a full and complete settlement of all claims asserted in the Class Action and PAGA Action.  While the Court's Order granting preliminary approval set forth the relevant terms

---

[2] Plaintiffs state that the "PAGA Action was consolidated with this Action," (ECF No. 52-1 at 4), however, no formal consolidation finding was made by the Court.

[3] The Settlement Agreement defines the Class in the same way that the FAC defines the Class.  (ECF No. 61-2 at 14).  Because the Class was certified for purposes of settlement, throughout the Order, the Court uses the term "Settlement Class" to refer to the Class.

of the Settlement Agreement, (Prelim. Order at 5–7), the Court reiterates the key provisions here.

### 1. Class Definition

The Settlement Agreement defines the Settlement Class the same as defined in the FAC, namely, as all individuals who worked for Denny's in California and classified as non-exempt, hourly employees at any location in California during the Class Period. (ECF No. 61-2 at 14). The Settlement Agreement defines "Aggrieved Employees" as persons employed by Denny's in California classified as a non-exempt hourly employee from October 16, 2018, to August 4, 2022 (the "PAGA Period"). (*Id.* at 14, 16). Participating members of the Settlement Class are those members who do not submit a valid and timely Request for Exclusion from the Settlement ("Participating Class Member").[4] (*Id.* at 17).

### 2. Monetary Relief

Pursuant to the Settlement Agreement, Defendant agrees to pay an amount not to exceed $4,000,000.00 (the "Total Settlement Amount" or "TSA"). (*Id.* at 19). The TSA excludes Defendant's side of payroll taxes, which Defendant will pay separately. The TSA includes payments made to: Participating Class Members, settlement administration costs, any court-approved awards of attorneys' fees and costs, any service awards for the Plaintiff who represents the Settlement Class ("Representative Plaintiff"), and payment to Aggrieved Employees and the LWDA. (*Id.* at 19–21). The remaining funds that will be distributed to Participating Class Members is called the "Net Settlement Amount."[5] (*Id.* at 16). Participating Class Members will be paid the "Individual Class Payment," the pro rata

---

[4] The Settlement Agreement defines "Settlement Class Member" as: "a member of the Class, as either a Participating Class Member or Non-Participating Class Member (including a Non-Participating Class Member who qualifies as an Aggrieved Employee)." (ECF No. 61-2 at 14).

[5] The Settlement Agreement defines the Net Settlement Amount as "the Total Settlement Amount, less the following payments in the amounts approved by the Court: Individual PAGA Payments, the LWDA PAGA Payment, Class and PAGA Representative Service Payments, Class/PAGA Counsel Fees Payment, Class/PAGA Counsel Litigation Expenses Payment, and the Administrative Expenses Payment." (ECF No. 61-2 at 16).

share of the Net Settlement Amount calculated according to the number of Workweeks[6]
worked during the Class Period.  (*Id.*).

The Settlement Agreement provides the following allocation of the TSA:

Administration:  The Settlement Agreement provides that the cost of the Administration shall not exceed $50,000.00.  (ECF No. 61-2 at 20).

Service Payment(s):  Defendant will not oppose an application for a "Class Representative Service Payment" in the amount of $5,000 to Plaintiff Estrada.  (*Id.* at 19).[7]

Class Counsel:  Defendant will not oppose Class/PAGA Counsel's (hereinafter "Class Counsel") application for a fees award that is up to $1,320,000.00, which is apparently "33% of the Total Settlement Amount."  (*Id.*).  The Settlement Agreement also provides for Class Counsel to seek a payment not to exceed $30,000 for litigation expenses and costs.  (*Id.*).

PAGA Penalties:  The Settlement Agreement provides for a $50,000.00 PAGA penalty that is allocated, per California Labor Code § 2699(i), *see* (Mot. at 12), as follows: 75% of the penalty goes to the LWDA, amounting to $37,500.00; and 25% of the penalty goes to Aggrieved Employees, amounting to $12,500.00, which will be distributed from the TSA.  (ECF No. 61-2 at 20).

Individual PAGA Payment:  The Settlement Agreement defines the Individual PAGA Payment as the pro rata share of 25% of the PAGA Penalties, calculated according to the number of Workweeks worked during the PAGA Period.  (*Id.*).

---

[6] Workweek is defined as "any week during which a Class Member worked for Denny's for at least one day, during the Class Period."  (*Id.* at 18).

[7] Although the Court indicated during the preliminary approval hearing that it was not inclined to approve a PAGA Representative Service Payment, and partially denied the Preliminary Motion on that basis, the Settlement Agreement attached to Class Counsel's declaration in support of this Motion still contains the monetary relief term that, if approved by this Court, Plaintiff De Leon will be awarded not more than $5,000 for a "PAGA Representative Service Payment."  (*Id.* at 19).

### 3.    Release of Claims:

Upon final judgment, each Plaintiff, Participating Class Member, and Aggrieved Employee will release all wage and hour claims and claims that they had, have, or thereafter may claim to have against the "Released Parties"[8] and that were asserted in the Estrada Class Action or that arise, or could have been asserted, based on "any of the facts, circumstances, transactions, events, occurrences, acts, disclosures, statements, omissions, or failures to act" alleged in the complaints, regardless of the source of law,[9] that occurred during the Class Period.  (*Id.* at 22–23).  The release does not include claims outside of the Class Period or PAGA periods, and does not extend to claims of harassment, retaliation, discrimination, workers' compensation, disability, wrongful termination, or unemployment benefits.  (*Id.* at 23).  Additionally, Plaintiffs Estrada and De Leon expressly waive their rights to unknown claims, under California Civil Code section 1542.[10]  (*Id.*).

## II.    LEGAL STANDARD

### A.    Final Approval of Class Certification

Parties seeking class certification for settlement purposes must satisfy the requirements of Federal Rule of Civil Procedure 23.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620–21 (1997).  The threshold task when deciding whether to grant final approval of a class action settlement is to "ascertain whether the proposed settlement satisfies the requirements of Fed. R. Civ. P. 23(a)," which are: "(1) numerosity, (2) commonality, (3)

---

[8] The Settlement Agreement defines Released Parties as "Denny's and each of its former, present, and future principals, agents, directors, officers, shareholders, owners, employees, employers, partners, successors, assignees, heirs, devisees, indemnitors, insurance companies, and attorneys."  (ECF No. 61-2 at 17).

[9] The Settlement Agreement specifies violations of PAGA, specifically: "Labor Code sections: 201, 202–203, 204, 221–225.5, 226, 226.7, 510, 512, 558, 1174, 1194, 1197, and 2802, as well as IWC Wage Order No. 5, subdivisions 3, 5, 9, 11, and 12, during the PAGA Period."  (*Id.* at 23).

[10] California Civil Code section 1542 provides: "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."

typicality, and (4) adequacy of representation." *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1019 (9th Cir. 1998). In considering such a request, a court must give the Rule 23 certification factors "undiluted, even heightened, attention in the settlement context." *Amchem Prods*, 521 U.S. at 620.

### B.    Final Approval of Class Settlement

Once a class is certified, Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "Courts reviewing class action settlements must ensure that unnamed class members are protected from unjust or unfair settlements affecting their rights, while also accounting for the strong judicial policy that favors settlements . . . ." *Campbell v. Facebook, Inc*., 951 F.3d 1106, 1121 (9th Cir. 2020) (internal quotation, alteration marks, and citation omitted). A district court must examine the settlement for "overall fairness." *In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539, 569 (9th Cir. 2019) (en banc). Accordingly, before approving a class action settlement under Rule 23, a district court must conclude that the settlement is "fundamentally fair, adequate, and reasonable." *Id.*; *Hanlon*, 150 F.3d at 1026. In the Ninth Circuit, there is a "strong judicial policy that favors settlements." *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (quoting *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir.2008)).

## III.    CLASS CERTIFICATION[11]

Final approval of a class action settlement requires an assessment of whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b). *Hanlon*, 150 F.3d at 1019–22. Because no facts that would affect these requirements have changed since the Court preliminarily approved the class on March 1, 2024, this order incorporates by reference the Court's prior analysis under Rules 23(a) and (b) as set forth in the order granting preliminary approval. *See* (Prelim. Order at 10–16); *see also Smith v. Keurig*

---

[11] As noted in the Preliminary Approval Order, only Plaintiff Estrada sought to be approved as Class Representative under Rule 23. (Prelim. Order at 10).

*Green Mountain, Inc*., No. 18-CV-06690-HSG, 2023 WL 2250264, at *4 (N.D. Cal. Feb. 27, 2023).

## IV.   FAIRNESS DETERMINATION

Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). "Approval under [Rule] 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 525 (C.D. Cal. 2004). Final approval of a class action settlement may only be granted if the Court, after "evaluat[ing] the fairness of a settlement as a whole," finds that the settlement is "fair, reasonable, and adequate." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818–20 (9th Cir. 2012) (quoting Fed. R. Civ. P. 23(e)(2)).

Congress and the Supreme Court amended Rule 23(e) in 2018 "to set forth specific factors to consider in determining whether a settlement is 'fair, reasonable, and adequate.'" *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021). Specifically, Rule 23(e)(2) provides the following:

If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

(A)   the class representatives and class counsel have adequately represented the class;

(B)   the proposal was negotiated at arm's length;

(C)   the relief provided for the class is adequate, taking into account:

(i)   the costs, risks, and delay of trial and appeal;

| | | |
|---|---|---|
| | (ii) | the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; |
| | (iii) | the terms of any proposed award of attorney's fees, including timing of payment; and |
| | (iv) | any agreement required to be identified under Rule 23(e)(3); and |
| (D) | | the proposal treats class members equitably relative to each other. |

Fed. R. Civ. P. 23(e)(2); *see also Briseño*, 998 F.3d at 1023–24.  Additionally, in the Ninth Circuit, "a district court examining whether a proposed settlement comports with Rule 23(e)(2) is guided by the following non-exhaustive list of factors, "the relative degree of importance" of which will depend on the "unique circumstances presented by each individual case." *Officers for Just. v. Civil Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).  These factors are:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021) (quoting *In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)) (the "*Churchill* factors"); *see also Briseño*, 998 F.3d at 1025–26 (recognizing that most *Churchill* factors "fall within the ambit of the revised Rule 23(e)," but "Congress provided district courts with new instructions—such as analyzing the 'terms of the settlement' and 'terms of any proposed award of attorney's fees'—that require them to go beyond our precedent" (citation omitted)).

Additionally, particularly when there is a settlement prior to formal class certification, a court must ensure that the parties reached their settlement through arms-length negotiation and that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Officers for Just.*, 688 F.2d at 625; *see also In re Bluetooth,* 654 F.3d at 948.

### A.    Procedural Fairness

When, as here, a settlement agreement has been negotiated before a class has been certified, the court must also "undertake an additional search for 'more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations.'" *In re Volkswagen*, 895 F.3d 597, 610–11 (9th Cir. 2018) (quoting *In Re Bluetooth*, 654 F.3d at 946–47). Three "oft-cited 'red flags'"[12] of unfair settlements are: (1) class counsel receiving a disproportionate amount of the settlement or being "amply rewarded" when class members receive no monetary relief; (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds"; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *In re Bluetooth*, 654 F.3d at 947. In its Preliminary Order, the Court found that, on balance, the Settlement Agreement appeared to be negotiated at arm's length and the negotiations appeared to be procedurally fair. (Prelim. Order at 19–20).

The Court again finds that the Settlement Agreement is procedurally fair. The first *Bluetooth* factors weighs against a finding of collusion because the Settlement Agreement does not provide a disproportionate distribution of the settlement. Pursuant to the Settlement Agreement, Class Counsel may seek up to $1,320,000.00 in fees, approximately 33% of the Total Settlement Amount, which falls within the "typical range of acceptable attorneys' fees in the Ninth Circuit." *Razo v. AT&T Mobility Servs., LLC*, No. 1:20-CV-0172 JLT HBK, 2022 WL 4586229, at *10 (E.D. Cal. Sept. 29, 2022) (The typical range

---

[12] *Botonis v. Bimbo Bakeries USA, Inc.*, No. 2:22-CV-01453-DJC-DB, 2024 WL 100545, at *7 (E.D. Cal. Jan. 9, 2024).

of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark." (citing *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000))); *Lim v. Transforce, Inc*., No. LA CV19-04390 JAK (AGRx), 2022 WL 17253907, at *12 (C.D. Cal. Nov. 15, 2022) ("The amount of attorney's fees and costs permitted in the Settlement Agreement – 33.33% of the Gross Settlement Amount – is substantial but not so disproportionate as to suggest collusion."); *see also* (ECF No. 61-2 at 19–20).  The second *Bluetooth* factor, however, implicates a possibility of collusion because the Settlement Agreement's fee provision provides that Defendant "agrees not to challenge a request for an agreed-upon attorney's fee." *Martinez v. Helzberg's Diamond Shops*, Case No. ED CV 20-1085 PSG (SHKx), 2021 WL 9181893, at *7 (C.D. Cal. Sept. 24, 2021) (quoting *Briseño v. Henderson*, 998 F.3d at 1027).  But the "mere presence of such an agreement is not 'an independent basis for withholding settlement approval.'" *Id.* Finally, because "[n]one of the Total Settlement Amount will revert to [Defendant]," the third *Bluetooth* factor weighs in favor of approval.  (ECF No. 61-2 at 19); *see also Briseño*, 998 F.3d at 1023 (when a settlement agreement returns unawarded fees to the defendant, rather than the class, that "kicker" or "reverter" clause weighs toward a finding of class counsel self-interest).  Based on the above factors, the Court finds that the proposed settlement appears to be the product of serious, informed, non-collusive negotiations.  This finding weighs in favor of final approval of the Settlement Agreement.

### A.    Substantive Fairness

In determining whether the proposed Settlement Agreement is fair, reasonable, and adequate, the Court addresses each of the factors set forth by Rule 23(e)(2) and Ninth Circuit precedent.  *See Briseño*, 998 F.3d at 1025–26 (recognizing that while most Ninth Circuit factors "fall within the ambit of the revised Rule 23(e)," "Congress provided district courts with new instructions—such as analyzing the 'terms of the settlement' and 'terms of any proposed award of attorney's fees'—that require them to go beyond our precedent").

1.  Rule 23(e)(2)(A): Adequacy of Representation by Class Representatives and Class Counsel

The first Rule 23(e) factor requires that the class representatives and class counsel have adequately represented the class. Fed. R. Civ. P. 23(e)(2)(A). Class representatives are adequate if the named plaintiff and counsel do not have any conflicts of interest with other class members and will prosecute the action vigorously on behalf of the class. *Hanlon*, 150 F.3d at 1020; *see also Kim*, 8 F.4th at 1178 (listing "the experience and views of counsel" as a *Churchill* factor).

In the Preliminary Approval Order, this Court concluded that Plaintiff Estrada satisfied the adequacy requirement under Rule 23(a)(4) and appointed Mahoney Law Group as Class Counsel and Plaintiff Estrada as representatives of the Class. (Prelim. Order at 12–14); *see Hilsley v. Ocean Spray Cranberries, Inc*., No. 3:17-CV-2335-GPC-MDD, 2020 WL 520616, at *5 (S.D. Cal. Jan. 31, 2020) ("Because the Court found that adequacy under Rule 23(a)(4) has been satisfied above, due to the similarity, the adequacy factor under Rule 23(e)(2)(A) is also met."). Additionally, Class Counsel has significant experience in wage and hour collective actions, including in landmark cases. *See* (Odenbreit Decl. ¶¶ 8–16; Prelim. Order at 13–14); *see also Kim*, 8 F.4th at 1178. Accordingly, the Settlement Class is adequately represented, which weighs in favor of approval of the proposed settlement.

2.  Rule 23(e)(2)(B): Arm's-Length Negotiation

The second Rule 23(e)(2) factor requires that the proposed Settlement Agreement have been negotiated at "arm's length." Fed. R. Civ. P. 23(e)(2)(B). As discussed above and throughout the Preliminary Approval Order, the Settlement Agreement is the result of informed, arm's-length negotiations. Further, the parties reached settlement after engaging an experienced mediator. (Odenbreit Decl. ¶ 5); *see* Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment ("the involvement of a neutral or court-affiliated mediator or facilitator . . . may bear on whether [negotiations] were conducted in a manner that would protect and further the class interests"); *see also Hanlon*, 150 F.3d at 1027

(affirming approval of settlement after finding "no evidence to suggest that the settlement was negotiated in haste or in the absence of information illuminating the value of plaintiffs' claims"); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution . . . ."). This factor thus weighs in favor of approval of the proposed settlement.

### 3.    Rule 23(e)(2)(C): Adequacy of the Relief

The third Rule 23(e)(2) factor requires the court to consider whether the relief provided for the class is adequate, taking into account: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C); *see also Kim*, 8 F.4th at 1178. In this consideration, district courts in the Ninth Circuit compare the settlement amount to what the parties estimate would be the maximum recovery in a successful litigation. *See Litty v. Merrill Lynch & Co.*, No. CV 14–0425 PA (PJWx), 2015 WL 4698475, at *9 (C.D. Cal. Apr. 27, 2015) (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000)).

#### i.    *Costs, Risks, and Delay of Trial and Appeal*

When considering "the costs, risks, and delay of trial and appeal," Fed. R. Civ. P. 23(e)(2)(C)(i), courts in the Ninth Circuit evaluate "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial . . . ." *Hanlon*, 150 F.3d at 1026; *Kim*, 8 F.4th at 1178 (listing "the risk, expense, complexity, and likely duration of further litigation" as a *Churchill* factor). "[T]he Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Martinelli v. Johnson & Johnson*, No. 2:15-CV-01733-MCE-DB, 2022 WL 4123874, at *4 (E.D. Cal. Sept. 9, 2022).

This Court carefully considered the risks of continued litigation and found that, while $4 million is a fraction of Class Counsel's estimated value of each claim, the immediacy of the recovery and the certainty with which Participating Class Members will be able to recover justified preliminary approval. *See* (Prelim. Order at 21–23). The Court finds that this similarly weighs in favor of final approval and incorporates by reference its previous analysis of the value of each of Plaintiffs' claims. *See* (*id.*). Here, continued litigation would likely be costly and result in a substantial delay of whatever potential relief might be obtained in the absence of a settlement. *See Martinelli*, 2022 WL 4123874 at *5 ("[P]rotracted litigation would likely come at considerable expense to both parties."). Specifically, Class Counsel identified specific risks of proceeding with litigation, including Defendant's defenses to Plaintiffs' claims, that Class Counsel would need to heavily rely upon Settlement Class Members' information and experience of Defendant's violations— raising burdensome practical issues—because Defendant has a facially legally compliant written policy, and that a court would be unlikely to award the total value the PAGA claims (estimated to be approximately $18 million). (Prelim. Order at 21–23; Mot. at 20–21). In reaching a settlement, Plaintiffs have ensured a favorable recovery for the Settlement Class. *See Rodriguez*, 563 F.3d at 966 (litigation risks weigh in favor of approving class settlement); *see also Testone v. Barlean's Organic Oils, LLC*, No. 3:19-cv-00169-RBM-BGS, 2023 WL 2375246, at *3 (S.D. Cal. Mar. 6, 2023) (finding as a basis for approving the settlement that the "[p]laintiffs face significant risks if this case proceeded to trial, while the parties' settlement achieves a definite result").

Thus, these factors also weigh in favor of approving the Settlement Agreement.

        *ii.*    *Effectiveness of Proposed Method of Relief Distribution*

Rule 23(e) directs the court to consider the "effectiveness of any proposed method of distributing relief to the class." Fed. R. Civ. P. 23(e)(2)(C)(ii). "[T]he goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." *Musgrove v. Jackson Nurse Pros., LLC*, No. CV 17-6565 FMO (SSX), 2022 WL 18231364, at *6 (C.D. Cal.

June 24, 2022) (quoting 4 Newberg on Class Actions, § 13:53 (5th ed.)). Further, "[o]ften it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims." Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment.

Here, Participating Class Members will receive their portion of the Settlement by U.S. mail. The Settlement Administrator sent notice to the Settlement Class after receiving a data file from counsel for Defendant containing the class member's names, last known mailing address, social security numbers, and workweeks for each member of the Settlement Class during the Class Period: the Settlement Administrator represents that the final mailing list identified 8,559 individuals as Class Members. (ECF No. 61-1 ("Admin. Decl.") ¶ 3). The Settlement Administrator also conducted a National Change of Address search, which provides updated addresses for any individual who moved within the previous four years and notified the U.S. Postal Service of that change of address. (*Id.* ¶ 4). The Settlement Administrator has already mailed notice and represents that, after conducting further "skip tracing" to locate other addresses for a subset of the Settlement Class whose Class Notices were returned, "no Class Notices are considered undeliverable." (*Id.* ¶¶ 6–7). Only two individuals requested to be excluded. (*Id.* ¶ 8).

Once the Settlement Administrator "issue[s] checks for the Individual Class Payments and/or Individual PAGA Payments and send[s] them to the Class Members/Aggrieved Employees via First Class U.S. Mail, postage prepaid," the Settlement Agreement also requires the Settlement Administrator to conduct a "Class Member Address Search" for all checks returned as undeliverable, ascertain a new address, and re-mail the check within seven days of the Settlement Administrator receiving a returned check. The Settlement Agreement does not require the Settlement Administrator to take further steps if a re-mailed check is returned again. The Settlement Administrator is further required to "promptly send a replacement check" to any Class Member who lost or misplaced their original check, so long as the Class Member requests a replacement prior to the void date. (ECF No. 61-2 at 22). If a check is delivered but uncashed and cancelled

after the void date, the Settlement Administrator will transmit those funds to the California Controller's Unclaimed Property Fund in the name of the Class Member. (*Id.*). The Class Notice also reflects that the Settlement Administrator has a case-specific website and hotline for Class Members to utilize. (ECF No. 61-1 at 10).

Because the proposed method of distributing relief to Class Members is based on each Class Member's mailing address on record with the U.S. Postal Service and requires no actions from Participating Class Members to receive their share, the method effectively distributes relief to Class Members and weighs in favor of final approval.

### iii.  *Proposed Award of Attorneys' Fees*

The Court must consider the "terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). Here, Defendant has agreed to not dispute a request by Class Counsel for a fees payment of not more than 1,320,000 which is approximately 33% of the total settlement amount. (ECF No. 61-2 at 19). As outlined above and discussed more thoroughly below, this amount falls within the acceptable range in the Ninth Circuit and does not evidence any signs of self-interest by Class Counsel. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 953 (9th Cir.2015) (approving fee award of 25%); *Razo*, 2022 WL 4586229, at *10 ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark."). This weighs in favor of final approval.

### iv.  *Settlement Agreement with Lead Plaintiff*

The Court must also evaluate any agreement made in connection with the proposed Settlement Agreement. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3). Plaintiffs request a $5,000 incentive award for Plaintiff Estrada as compensation for her work on behalf of the Class. *See* (Mot. at 12). The Court preliminarily held that the incentive award to Plaintiff Estrada fell within the range of possible approval and appeared fair and reasonable.

(Prelim. Order at 13–14).[13]   Though the Ninth Circuit has not set a benchmark, incentive awards in this Circuit typically range from $2,000 to $10,000 with courts treating $5,000 payments as presumptively reasonable.  *See, e.g., Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267–68 (N.D. Cal. 2015) (citing cases).  The requested $5,000 incentive award for Plaintiff Estrada therefore falls within the range of typical incentive awards.  Thus, this weighs in favor of final approval.

> ### 4.    Rule 23(e)(2)(D): Equitable Treatment Among Participating Class Members

The final Rule 23(e)(2) factor requires that the "proposal treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief."  Fed. R. Civ. P. 23(e)(2)(D) advisory committee's note to 2018 amendment.

The Settlement Agreement appears to treat Participating Class Members equitably because the individual payments will be issued on a *pro rata* basis based on their workweeks.  *See* (Prelim. Order at 29–30; ECF No. 61-2 at 20).  Issuing individual awards on a *pro rata* basis is "inherently equitable because it treats Class Members fairly based on the amount of each member's potential damages," *Perks v. Activehours, Inc.*, No. 5:19-CV-05543-BLF, 2021 WL 1146038, at *6 (N.D. Cal. Mar. 25, 2021), and is a method commonly used in wage-and-hour class cases.  *See, e.g., Cicero v. DirecTV, Inc.*, No. EDCV 07-1182, 2010 WL 2991486, at *5 (C.D. Cal. July 27, 2010) ("[T]he fund will be distributed based on the number of weeks worked by each class member, which appears to be a fair method of distributing the fund."); *Lim*, 2022 WL 17253907, at *14 ("Providing

---

[13] The Settlement Agreement and Class Notice still provide that Class Counsel may request an incentive award for PAGA Representative, Plaintiff De Leon.  (ECF No. 61-2 at 19; ECF No. 61-1 at 8).  The Court previously denied that request, (Prelim. Order at 27–28), and Plaintiffs have not renewed that request in the Motion.  *See* (Mot.).

a larger payment to drivers who worked more weeks is reasonable in that they would have worked more hours and sustained more of the alleged damages."); *Pierce v. Rosetta Stone, Ltd.*, No. 11-01283 SBA, 2013 WL 1878918, at *6–7 (N.D. Cal. May 3, 2013); *Altamirano v. Shaw Indus., Inc.*, No. 13-cv-00939, 2015 WL 4512372, at *8 (N.D. Cal. July 24, 2015) (finding no preferential treatment because the settlement "compensates class members in a manner generally proportionate to the harm they suffered on account of [the] alleged misconduct"). Furthermore, as outlined above and discussed more thoroughly below, the incentive award for Plaintiff Estrada is reasonable and does not "constitute inequitable treatment of class members." *Perks*, 2021 WL 1146038, at *6 (N.D. Cal. Mar. 25, 2021) (citing *Rodriguez*, 563 F.3d at 958–59). The Court finds that this factor weighs in favor of approval. *See* Fed. R. Civ. P. 23(e)(2)(D).

### 5.   Remaining *Churchill* Factors

As discussed above through the Rule 23(e)(2) factors, the Court finds that the following *Churchill* factors weigh in favor of final approval: "the strength of the plaintiff's case;" "the risk, expense, complexity, and likely duration of further litigation;" "the risk of maintaining class action status throughout the trial; and "the experience and views of counsel." *See In re Bluetooth*, 654 F.3d at 946. For the reasons that follow, the remaining *Churchill* factors, on balance, also weigh in favor of final approval.

#### v.    *Amount Offered in Settlement*

As the Ninth Circuit has stated, "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is [thus] not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625. Therefore, the fact that a proposed settlement may "only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998) (citation omitted).

Here, the $4 million settlement results in approximately $2.5 million in benefits to the Settlement Class (the "Net Settlement Amount"), with the average Individual Class Payment amounting to $297.42. (Admin. Decl. ¶¶ 13–14). As outlined above, $50,000 of the Total Settlement Amount has been allocated to PAGA Penalties, 75% of which will be paid to the LWDA. Aggrieved Employees will receive a pro rata portion of the 25% of the PAGA Penalties (approximately $12,500), with the average award amounting to $1.85. (*Id.* ¶ 15). Pursuant to the Settlement Agreement, Defendant agreed to fund the employer-side taxes due separately and apart from the Total Settlement Amount. (*Id.*¶ 16).

As the Court discussed in the Preliminary Approval Order, the amount of the settlement, when considered against the hurdles to recovery posed by continued litigation, weighs in favor of preliminary approval. *See* (Prelim. Order at 20–23). The Total Settlement Amount—without including the "estimated exposure of the PAGA claims"—represents approximately 44% of the total estimated verdict value for the Class. *See* (Mot. at 22). Based on the Court's consideration of the Settlement Agreement at this stage, the Court finds no reason to depart from its previous finding.

### (1)    PAGA Allocation

Additionally, Plaintiffs have demonstrated that the PAGA allocation of the Total Settlement Amount—$50,000—is fair under the circumstances. During the hearing on Plaintiffs' motion for preliminary approval, and in the Court's Preliminary Approval Order, the Court questioned whether the substantial decrease from the estimated value of the PAGA claims, $18,957,794, was justified and asked Plaintiff to address several recent district court cases which have carefully looked at the amount of PAGA allocations in determining whether to approve a settlement. *See* (Prelim. Order at 25–26). In this Motion, Plaintiffs explain that the reduction of the PAGA allocation to $50,000 is justified because the PAGA allocation still amounts to a permissible 1.25% of the Total Settlement Amount, because courts may reduce PAGA penalties if the court finds them to be "unjust, arbitrary, and oppressive," (Mot. at 23 (quoting Cal. Labor Code § 2699(e)(2)), and courts—including a California Courts of Appeal case—have, in fact, reduced penalties on that basis.

Plaintiffs also contend that this case differs from the problematic PAGA allocation disapproved of in *O'Connor v. Uber Techs, Inc.*, 201 F. Supp. 3d 1110 (N.D. Cal. 2016). In *O'Connor*, the LWDA objected to the PAGA allocation while LWDA has not objected here. (Mot. at 24). Finally, Plaintiffs argue that, because the PAGA Aggrieved Employees are also Settlement Class Members, Aggrieved Employees will still receive "substantial monetary relief,"—namely, an average payment of $297.42, which "[o]n average equates to payment for nearly 22 hours of work." (Mot. at 24 (citing Odenbreit Decl. ¶ 21)).

Under PAGA, "an 'aggrieved employee' may bring a civil action personally and on behalf of other current or former employees to recover civil penalties for Labor Code violations." *Villacres v. ABM Indus. Inc.*, 189 Cal. App. 4th 562, 572 (2010) (citing *Arias v. Superior Ct.*, 46 Cal. 4th 969, 980–81 (2009)) (internal quotation marks omitted). "[T]he state is the real party in interest, and the action is 'fundamentally a law enforcement action designed to protect the public and not to benefit private parties.'" *Gonzalez v. CoreCivic of Tenn., LLC*, No. 1:16-CV-01891-DAD-JLT, 2018 WL 4388425, at *7 (E.D. Cal. Sept. 13, 2018) (citation omitted)). PAGA provides that a plaintiff may seek penalties of one hundred dollars ($100) per aggrieved employee, per pay period, for an initial Labor Code violation and two hundred dollars ($200) for each subsequent violation per aggrieved employee per pay period.[14] Cal. Lab. Code § 2699(f)(2). District courts have approved PAGA settlements when the "relief provided for under the PAGA [is] genuine and meaningful, [and] consistent with the underlying purpose of the statute to benefit the public." *O'Connor*, 201 F. Supp. 3d at 1133 (N.D. Cal. 2016) (quoting Labor & Workforce Development Agency Resp. at 2–3). "[I]n evaluating the adequacy of a settlement of a PAGA claim, courts may employ a sliding scale, taking into account the value of the settlement as a whole." *Viceral v. Mistras Grp., Inc.*, No. 15-CV-02198-EMC, 2016 WL 5907869, at *9 (N.D. Cal. Oct. 11, 2016). "[W]here a settlement for a Rule 23 class is

---

[14] Plaintiffs have stated that the law surrounding subsequent violation penalties is unsettled as to "when or if [p]laintiffs can seek" this penalty. *See* (ECF No. 52-1 at 22–23).

robust, the statutory purposes of PAGA may be fulfilled even with a relatively small award on the PAGA claim itself." *Id.*

The Court finds that Plaintiffs have demonstrated the PAGA allocation is fair based on the absence of LWDA objection, Class Counsel's knowledge and experience with PAGA actions and, in particular, Class Counsel's close examination of the value of the PAGA claims and awareness of unsettled law. While the Individual PAGA Payments average to only $1.85, California courts repeatedly defer to the purpose of the PAGA Act, namely that the Act "authorizes a representative action only for the purpose of seeking statutory penalties for Labor Code . . . . [A]n action to recover civil penalties is fundamentally a law enforcement action designed to protect the public and not to benefit private parties [ ]." *Arias*, 46 Cal. 4th at 986 (quotation marks and citation omitted); *Kim v. Reins International California, Inc*., 9 Cal. 5th 73 (2020) ("[C]ivil penalties recovered on the state's behalf are intended to remediate present violations and deter future ones, *not* to redress employees' injuries" (quotation marks and citation omitted)); *see also Canela v. Costco Wholesale Corp.*, 971 F.3d 845, 851–52 (9th Cir. 2020) (explaining that, while class actions award damages as "restitution for wrongs done to class members," PAGA suits "primarily seek to vindicate the public interest in enforcement of California's labor law" and "only 25 percent is allocated among employees," which is more of an "incentive to perform a service to the state" and not "restitution for wrongs done to members of the class"). In other words, because the purpose of the PAGA Act is to recover penalties for the state and public, instead of individuals, the average Individual PAGA Payment amounting to only $1.85 does not necessitate a finding of unfairness. On balance, the Court finds that the amount of settlement weighs in favor of final approval.

### vi.    *Stage of Proceedings and Extent of Discovery*

A court's consideration of the stage of the proceedings and extent of discovery essentially "evaluates whether 'the parties have sufficient information to make an informed decision about settlement.'" *Knapp*, 283 F. Supp. 3d at 833 (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)). Here, the parties began discussing

early resolution of this case a few months after Plaintiff Estrada filed the class action complaint on December 9, 2021. (ECF No. 1-1 ¶ 2; Odenbreit Decl. ¶ 4). Before the Estrada Class Action, however, Plaintiff De Leon had been involved in a separate case, the PAGA Action. Class Counsel opines that the "actions brough[t] by Ms. DeLeon consistently provided an avenue to obtain discovery and information related to Defendant's policies and practices not yet available in the *Estrada* class action because the Parties agreed to mediate shortly after the *Estrada* action was filed." (Odenbreit Decl. ¶ 4). Further, Class Counsel believes the DeLeon Action contributed to the "excellent result" for Class Members and Aggrieved Employees. (*Id.*). On August 4, 2022, the parties participated in a full day mediation with a "well regarded mediator, Hon. Carl West (Ret.)," who is "extremely familiar" with class actions related to labor disputes, and the parties reached a settlement shortly after the mediation. (*Id.* ¶ 5).

Before mediation, Plaintiffs engaged "well-regarded experts to prepare a potential value model" that assumed all claims would be certified, which was used by Class Counsel to estimate a reasonable value of the claims and to evaluate the claims' strength. (ECF No. 51-2 at 18). Plaintiffs contend settlement was only reached after "significant data, information and documents were exchanged," (ECF No. 52 at 25), and because of the evidence obtained from the prosecution of the De Leon PAGA Action, (Odenbreit Decl. ¶ 6). Thus, while Class Counsel did not need to engage in extended litigation and discovery in the Estrada Class Action, Class Counsel did devote time, resources, and skill contributing to settlement because of the unique procedural history of this case. *See Lim*, 2022 WL 17253907, at *11 ("The procedural history of the case shows that Class Counsel engaged in significant discovery, gathered material information about the scope and merits of the claims advanced, and were able to assess their value."). The exchange of evidence and valuation documents in addition to the presence of an experienced mediator lend support to the conclusion that the parties had sufficient information to make an informed decision about settlement. *See Knapp*, 283 F. Supp. at 833. And, as discussed above, the

Settlement Agreement appears to be the result of arm's length negotiations. Thus, this factor weighs in favor of approval of the Settlement Agreement.

### vii.    Presence of a Governmental Participant

The Settlement Agreement contemplates payment of $50,000 in PAGA Penalties, 75% of which are reserved for the LWDA. "Because LWDA is a governmental participant in the settlement, this too weighs in favor of approval of the settlement." *Swain v. Anders Grp.*, LLC, No. 1:21-CV-00197-SKO, 2023 WL 2976368, at *9 (E.D. Cal. Apr. 17, 2023); *Adoma v. Univ. of Phoenix, Inc*., 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (finding that the plaintiffs' pursuit to "enforce claims under California's Private Attorney General Act of 2004, Cal. Labor Code § 2698 *et seq*. ("PAGA") on behalf of the state and affected employees" weighed in favor of approval). Further, the LWDA has not objected to the Settlement Agreement. (Odenbreit Decl. ¶ 20); *see also In Re Nucoa Real Margarine Litig*., No. CV 10-00927 MMM (AJWx), 2012 WL 12854896, at *14 (C.D. Cal. June 12, 2012) (finding this factor weighed in favor of final approval when non-participant governmental officials "were notified of the terms of the settlement . . . and none indicated an intention to object"). The Court finds this factor weighs in favor of approval.

### viii.    Class Member's Reactions

Among the *Churchill* factors for district courts to consider is the reaction of the class to the settlement. *See In re Bluetooth*., 654 F.3d at 946. District courts find "that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Spann v. J.C. Penney Corp*., 211 F. Supp. 3d 1244, 1257 (C.D. Cal. 2016). According to the Settlement Administrator, after receiving notice, only two individuals requested to be excluded and no notices of objections have been received. (Admin. Decl. ¶¶ 8–9). Plaintiff contends that this absence of any Class Member objection supports final approval. (Mot. at 25–26).

The Court finds that the absence of objections and the low exclusion rate weigh in favor of final approval. *See Online DVD*, 779 F.3d at 941 (upholding settlement in which the parties sent direct notice to 35,000,000 class members and received 1,183,444 claims); *Briseno*, 844 F.3d at 1130 ("It is not unusual for only 10 or 15% of the class members to bother filing claims." (quoting Christopher R. Leslie, The Significance of Silence: Collective Action Problems and Class Action Settlements, 59 Fla. L. Rev. 71, 119 (2007))); *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig*., 295 F.R.D. 438, 456 (C.D. Cal. 2014) ("The negligible number of opt-outs and objections indicates that the class generally approves of the settlement." (citing cases)).

### 6.    Sufficiency of Notice

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all Settlement Class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Although Rule 23 requires that reasonable efforts be made to reach all Settlement Class members, it does not require that each Settlement Class member actually receive notice. *See Silber v. Mabon*, 18 F.3d 1449, 1450–51 (9th Cir. 1994) (noting that the standard for class notice is "best practicable," not "actually received").

The notice plan previously approved has been implemented. (Mot. at 14; Admin. Decl. ¶¶ 4; Prelim. Order at 14–15). The notice plan provided that Defendant would send the Settlement Administrator a data file containing "Class Data," compiled based on Defendant's records, setting forth each Class Members': (1) full name; (2) last known mailing address; (3) social security numbers; and (4) total number of work weeks worked during the Class Period and PAGA Pay Period. (Prelim. Order at 32–34; Admin. Decl. ¶ 6). On March 22, 2024, the Settlement Administrator performed a search on the U.S. Postal Service National Change of Address Database and updated any addresses with any new information regarding the location of Class Members. *See* (Admin. Decl. ¶ 4). On March 22, 2024, the Settlement Administrator sent via first class mail the Court-approved Notice of Settlement to each Class Member. (*Id.* ¶ 5). As of the date of the Settlement Administrator's Declaration, April 24, 2024, the Settlement Administrator had received

799 returned Class Notices.  (*Id.* ¶ 6).  Consistent with the Settlement Agreement, the Settlement Administrator re-mailed the notices to all 799 individuals after performing a "skip trace" through TransUnion TLOxp.  (*Id.*).  The Settlement Administrator represents that "no Class Notices are considered undeliverable" and that 99.98% of the Class Members did not submit a request for exclusion, as of April 24, 2024.  (*Id.* ¶ 7).  Further, the Class Notice provided information on the meaning and nature of the proposed Class; the terms and provisions of the Settlement Agreement and the relief that the Settlement Agreement will provide to Participating Class Members; the application of Plaintiff for her Representative Payment and of Class Counsel's for their attorneys' fees and costs; the payment to the LWDA of its share of the PAGA Payment; the payment of the Settlement Administration Costs; and the procedure and deadlines for opting out of the Settlement or for submitting objections to the Settlement Agreement.  (Prelim. Order at 33–34).[15]

Accordingly, because the notice plan is consistent with the plan the Court previously approved and because Plaintiffs have submitted evidence that Class Members have actually received and understood the notice, the Court finds that notice is satisfied under Rule 23(c)(2)(B) and Rule 23(e)(1).

## V.    INCENTIVE AWARDS AND ATTORNEYS' FEES AND COSTS

### A.    Incentive Awards

"[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments."  *Staton v. Boeing Co.*, 327 F.3d

---

[15] The Notice apparently included the wrong information for the Final Approval hearing, noting that it was scheduled for May 29, 2024, before Judge Gee.  Though the final fairness hearing had previously been planned for May 29, 2024, after notice had been disseminated, on May 1, 2024, Plaintiffs requested an extension for the hearing, which the Court granted. (ECF Nos. 59–60).  Class Counsel represented that they would "advise the Settlement Administrator of the new date and time for the hearing to publish on the [A]dministrator's web page for this case."  (ECF No. 59 at 4).  Based on that remedial measure, and because hearing moved only after an apparently unavoidable situation arose with Class Counsel, the Court does not find that this inconsistency in the Notice is unduly unfair.

938, 977 (9th Cir. 2003). "Courts have discretion to issue incentive awards to class representatives." *Ochinero v. Ladera Lending, Inc.*, Case No. SACV 19-1136 JVS (ADSx), 2021 WL 4460334, at *9 (C.D. Cal. July 19, 2021) (citing *Rodriguez*, 563 F.3d at 958–59). Incentive or service awards intend to compensate class representatives for "work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. District courts evaluate these awards relative to the plaintiff's efforts, considering the financial or reputation risk involved, any personal difficulties encountered by the plaintiff, the amount of time spent, the duration of the litigation, and any personal benefit (or lack thereof) enjoyed by the plaintiff. *See In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 786 (9th Cir. 2022); *Knapp*, 283 F. Supp. 3d at 838 (approving a $5,000 incentive award in a false advertising case that involved deceptive discounts on a retail website). District courts also consider the "proportionality between the incentive payment and the range of class members' settlement awards." *See Smith v. Am. Greetings Corp.*, No. 14-CV-02577-JST, 2016 WL 362395, at *10 (N.D. Cal. Jan. 29, 2016).

Here, Plaintiff Estrada requests a $5,000 incentive payment, which amounts to 0.00125% of the Total Settlement Amount. *See* (Fees Mot. at 10–11). Plaintiff represents that Plaintiff Estrada "devoted significant time and resources to the litigation," no less than 45 hours of "personal time," which resulted in a settlement for over 8,500 employees. (*Id.*). Plaintiff Estrada "consistently spoke" with Class Counsel and "provid[ed] them detailed information regarding her employment with Defendant and the inner workings of Defendant. (*Id.* at 11 (citing ECF No. 52-8 ("Estrada Decl.") ¶ 10)). Plaintiff Estrada also was "directly involved" in the settlement negotiations and agreed to a broader release of her claims than other Class Members. (*Id.*). Plaintiffs also argue that Plaintiff Estrada took on reputational risk by agreeing to be the named Plaintiff. (Fees Mot. at 22).

The Court finds the requested incentive award to be reasonable and proportional to the effort expended by Plaintiff Estrada in this case. Though the Ninth Circuit has not set

a benchmark for the amount of incentive awards, awards ranging from $2,000 and $10,000 have found to be reasonable, with many district courts treating $5,000 as "presumptively reasonable." *See, e.g., Jacobo v. Ross Stores, Inc.*, No. CV 15-4701-MWF (AGRx), 2019 WL 13245093, at *7 (C.D. Cal. Aug. 6, 2019) (approving a $5,000 incentive award for a $4.854 million class action settlement in a deceptive pricing suit); *Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 WL 928133, at *27–28 (N.D. Cal. Apr. 3, 2009) (awarding $5,000 incentive payment, constituting 1.25% of the settlement fund, and finding that, "in general, courts have found that $5,000 incentive payments are reasonable"); *see also Odrick v. UnionBancal Corp.*, No. C 10-5565 SBA, 2012 WL 6019495, at *6–7 (N.D. Cal. Dec. 3, 2012) (granting an award of $5,000 to plaintiff prosecuting a wage and hour class action). Here, the incentive award is consistent with amounts considered by other district courts to be presumptively reasonable, does not involve an unduly large discrepancy between the incentive award and other individual Participating Class Member's payments, and represents a very small fraction of the total settlement value. *See Burden v. SelectQuote Insurance Services*, No. C 10–5966 LB, 2013 WL 3988771, at *6 (N.D. Cal. Aug. 2, 2013) (awarding class representative $5,000 even when they appeared for two depositions and spent 80 hours on the case). Further, the Court agrees that Plaintiff Estrada faced some reputational risk in agreeing to prosecute the wage and hour action on behalf of thousands of other employees. The Court therefore approves the incentive award for Plaintiff Estrada.

## B. Attorneys' Fees

Awards of attorneys' fees in class action cases are governed by Federal Rule of Civil Procedure 23(h), which provides that, after a class has been certified, the court may award reasonable attorneys' fees and nontaxable costs. Attorney's fees and costs "may be awarded in a certified class action where so authorized by law or the parties' agreement." *In re Bluetooth*, 654 F.3d at 941. Where litigation leads to the creation of a common fund, and parties seek attorneys' fees using the percentage-of-recovery method, "courts typically use 25% of the fund as a benchmark for a reasonable fee award." *Martinez*, 2021 WL

9181893, at *7 (citing *In re Bluetooth*, 654 F.3d at 942).  Courts may adjust the percentage of the common fund as appropriate under the circumstances.  *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047–48 (9th Cir. 2002).  If a requested award is an upward departure from the 25% benchmark, even if the defendant agrees to pay it, courts apply the following factors (the "*Vizcaino* factors"): "(1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *Tarlecki v. bebe Stores, Inc.,* No. C 05–1777 MHP, 2009 WL 3720872, at *4 (N.D. Cal. Nov. 3, 2009) (citing *Vizcaino*, 290 F.3d at 1048–50); *see also Hernandez v. Burrtec Waste & Recycling Servs., LLC*, No. 5:21-CV-01490-JWH-SP, 2023 WL 5725581, at *6–7 (C.D. Cal. Aug. 21, 2023) (applying the *Vizcaino* factors and approving an upward adjustment from the Ninth Circuit benchmark).  Courts are encouraged to use a second method as a cross-check after choosing a primary method but are not required to do so.  *See Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x 628, 630 (9th Cir. 2020) ("This Court has consistently refused to adopt a crosscheck requirement, and we do so once more." (citing cases)).

Here, the Settlement Agreement provides that Class Counsel may seek an award of attorneys' fees and costs up to approximately 33% of the Settlement's total value.  (Fees Mot. at 14).  Though Class Counsel's request is within the Ninth Circuit's acceptable range of attorney's fees, the request is above the 25% benchmark set by the Ninth Circuit.  *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) ("We have . . . established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach.").  Because the award departs from the 25% benchmark, the Court considers each of the *Vizcaino* factors and will "cross-check" the reasonableness using the lodestar method.

### 1. The Results Achieved

Courts treat the "overall result and benefit to the class from the litigation" as "the most critical factor in granting a fee award." *In re Omnivision Techs., Inc.*, 559 F. Supp.

2d 1036, 1046 (N.D. Cal. 2008). Class Counsel estimated the reasonable evaluation of all class claims to be approximately $9,035,921.25. (Prelim. Order at 21). As discussed throughout this Order and the Preliminary Approval Order, Class Counsel characterizes the $4 million non-reversionary common fund settlement as "excellent," and "substantial." (Odenbreit Decl. ¶ 4; Fees Mot. at 11). To date, no objections to the Settlement Agreement have been received. Based on the risks involved in continuing litigation and a "seemingly positive reaction from the Class Members," the Court finds that a positive result was achieved here. *See Bravo v. Gale Triangle, Inc.*, No. CV 16-03347 BRO (GJSx), 2017 WL 708766, at *14 (C.D. Cal. Feb. 16, 2017).

However, the record does not demonstrate "exceptional" circumstances that might justify an upward departure. In *Bravo*, the district court denied a 30% fee award when the class members were estimated to received "on average, $389.81, with a maximum award of $1,089.71." *Id.* (citing *Adoma*, 913 F. Supp. 2d at 982–83 (holding that recovery of $2,000 per class member in wage and hour class action was "not so exceptional" to justify an increase from the 25% benchmark)); *cf. Martinez*, 2021 WL 9181893, at *8 (finding exceptional circumstances when each class member received, on average, $9,206.99). Thus, while the Court finds that the favorable results support an award of fees, the present record and results achieved do not warrant an upward departure from the Ninth Circuit benchmark.

### 2. Risk of Litigation

The risk that continued litigation might result in no recovery is a "significant factor" in assessing the fairness and reasonableness of an award of attorneys' fees. *In re Omnivision Techs.*, 559 F. Supp. 2d at 1046–47; *see also Vizcaino*, 290 F.3d at 1048. As discussed above, the Court finds that there would be a risk for Plaintiffs to continue litigating this case, especially considering that substantial motion practice and trial could result, leaving Plaintiffs and the Class Members without a certain favorable result. (Fees Mot. at 16–17). Not only does the class size and reliance on individual Class Member's testimony pose practical burdens, but Defendant also continues to deny liability. *See* (*id.*

at 11–13).  Further, Class Counsel worked on a contingency basis with no guarantee of recovery.  *See* (Odenbreit Decl. ¶ 26); *Bravo*, 2017 WL 708766, at *15 ("[B]ecause Plaintiffs' counsel took this case on a contingency basis, they took a significant risk in advancing funds and spending time without any guarantee of recovery.").  This factor weighs in favor of awarding the requested 33% fee.

### 3.  Skill Required and Quality of Work

"The Court may also consider the skill required to prosecute and manage this litigation, as well as Plaintiffs' counsel's overall performance."  *Id*.  In addition to the complexity of the claims at issue, courts also consider the progression of the case when considering this factor.  *See Monterrubio v. Best Buy Stores, L.P*., 291 F.R.D. 443, 457 (E.D. Cal. 2013) (weighing this factor against an upward departure from the 25% benchmark when the case was a "garden-variety wage and hour class action"); *Navarro v. Servisair*, No. C 08-02716 MHP, 2010 WL 1729538, at *3 (N.D. Cal. Apr. 27, 2010) (noting that "the rapidity of the settlement and the lack of extensive motion practice" weighed toward a downward departure from the benchmark).

Here, Class Counsel is experienced in wage and hour class actions and, as discussed above, obtained a favorable result.  *See* (Odenbreit Decl. ¶ 28).  Class Counsel represents that the law surrounding recovery of PAGA penalties is somewhat unsettled, and the Court understands that the practical burdens associated with prosecuting this action on behalf of the class require skilled counsel.  Class Counsel, however, has not represented that this case would involve any type of novel issue of law.  *See Navarro*, 2010 WL 1729538, at *3 (declining a 30% fees award when the parties "reached this settlement relatively quickly without litigating any motions for summary judgment or class certification").  Thus, this factor weighs slightly against the requested 33% fee.

### 4.  Contingent Nature and Financial Burden

Courts consider whether the contingent nature of the representation may justify a higher percentage fee award based on the risk that counsel may not recover any award, as

well as the financial burden accompanying the contingent nature of the representation.  *See
In re Omnivision Techs*., 559 F. Supp. 2d at 1047; *see also Vizcaino*, 290 F.3d at 1048–50.

Here, Class Counsel incurred $29,789 in litigation costs and expenses.  (Odenbreit
Decl. ¶ 23).  Class Counsel also spent 447.2 hours working on the matter, exclusive of time
spent with the final fairness hearing and any subsequent work with the Administrator.  (*Id.*
¶ 26).  The Court recognizes the burden the contingent nature of the representation puts on
Class Counsel, but that burden does not appear out of the ordinary for contingency cases,
a fee structure of which Class Counsel "typically" employs.  (*Id.*).  Further, settlement was
reached early in this case before the parties engaged in substantial motion practice.  Thus,
the circumstances weigh slightly against departing from the 25% benchmark.  *See Bravo*,
2017 WL 708766, at *15–16 (weighing this factor against an "upward adjustment" when
"the parties reached settlement early in the proceedings," and plaintiff's counsel "was not
required to forward a substantial amount of costs" when it advanced $17,293.46 in fees
and costs).

### 5. Awards Made in Similar Cases

Courts also consider similar awards in other cases to determine whether the award
requested is "commensurate with percentage-of-the-benefit awards made in other wage-
an-hour actions in th[e] district."  *Barbosa v. Cargill Meat Sols. Corp*., 297 F.R.D. 431,
449–50 (E.D. Cal. 2013); *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1047–
48 ("[N]early all common fund awards [that] range around 30% . . . achieve this result after
lengthy motion practice, volumes of discovery, and hence, the accumulation of extensive
attorney time on behalf of all parties." (citations omitted)).

Plaintiffs cite several cases to argue that "[c]ourts within this Circuit have awarded
one-third of the common fund in fees," (Fees Mot. at 15–16), but the cases do not support
a fee award above the benchmark for two reasons.  First, the circumstances in the case
Plaintiffs cite differ from the present circumstances, including the complexity of the issues
handled by class counsel and higher individual amounts awarded to class members.
Plaintiff's counsel has not shown that this case involved novel (or complex) legal or factual

issues, significant motion practice, or that this settlement is exceptional. *Cf. Elliott v. Rolling Frito-Lay Sales, LP*, No. SACV 11-01730 DOC, 2014 WL 2761316, at *6–7, 10 (C.D. Cal. June 12, 2014) (awarding a 30% fee award to compensate counsel for taking on difficult legal issues, including "novel legal issues" that were "compounded" by complex factual circumstances); *Barbosa*, 297 F.R.D. at 449–50 (awarding 30% fees award when the wage and hour case was actively litigated, "required specialist skills to litigate the legal theories relating to wage and hour law and labor law at issue in the case," and required working with many non-English speaking class members); *Ching v. Siemens Indus., Inc*., No. 11-CV-04838-MEJ, 2014 WL 2926210, at *7 (N.D. Cal. June 27, 2014) (approving a 30% fees award (amounting to $128,500) when the average award was $2,672.56); *Bower v. Cycle Gear, Inc*, No. 14-CV-02712-HSG, 2016 WL 4439875, at *7 (N.D. Cal. Aug. 23, 2016) (awarding 30% when counsel had litigated the case for more than 700 hours and "[t]he average recovery for California Class Members is approximately $1,250.12"); *Hester v. Vision Airlines, Inc*., No. 2:09-CV-00117-RLH, 2014 WL 3547643, at *11 (D. Nev. July 17, 2014) (awarding fees amounting to 30% of settlement because counsel obtained an "exceptionally favorable result," given the complexity of the case, length of the litigation, and that the settlement amounted to "94% of total recovery, [which was] exceptional in view of [Defendant's] threatened bankruptcy"); *Stuart v. Radioshack Corp*., No. C-07-4499 EMC, 2010 WL 3155645, at *1, 6 (N.D. Cal. Aug. 9, 2010) (awarding 30% fees of a settlement reached nine days before trial after "vigorous" litigation, including class certification and trial briefing) "); *Vasquez v. Coast Valley Roofing, Inc*., 266 F.R.D. 482, 492 (E.D. Cal. 2010) (awarding 30% fees when counsel "litigate[d] cutting-edge legal theories surrounding rest and meal periods, and navigate[d] challenging issues of proof in light of the limited recording keeping by Defendant" and average award was approximately $2,600); *Singer v. Becton Dickinson & Co*., No. 08-CV-821-IEG (BLM), 2010 WL 2196104, at *8 (S.D. Cal. June 1, 2010) (awarding 30% when "the complexity and duration of the case, coupled with the intensity of settlement negotiations" favored an upward departure); *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *7, 21

(C.D. Cal. June 10, 2005) (awarding 30% fees award for a national class action with forty defendants, issues of first impression, and other exceptional circumstances). Second, Plaintiffs also cite cases not related to wage and hour class actions without explaining why such cases demonstrate that the requested fee percentage is "commensurate" with awards made in "other wage-and-hour actions." *Barbosa*, 297 F.R.D. at 449–50 (E.D. Cal. 2013). *See In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (settlement regarding a derivative and securities class action); *Estrella v. Freedom Fin. Network, LLC*, No. CV 09-03156 SI, 2012 WL 4645012, at *3 (N.D. Cal. Oct. 1, 2012) (settlement regarding a consumer class action, which was also reached after class certification motions and summary judgment motions were filed); *Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*, No. CV 07-3072 AHM (FMMx), 2009 WL 9100391, at *1 (C.D. Cal. June 24, 2009) (settlement regarding a highly litigated civil rights class action in which the "factual issues were complex, and management of the process required a high level of skill and effort"). Thus, Plaintiff's authority does not demonstrate that "similar" cases justify the upward departure from the Ninth Circuit benchmark.

The Court finds *Bravo* instructive. In *Bravo*, the settlement was reached before motions for class certification, and the individual awards amounted to approximately $389.81, with a maximum recovery of $1,089.71. *See Bravo*, 2017 WL 708766 at *14–16 (citing cases). Here, the parties engaged in no motion practice prior to settlement, and both the average and maximum recovery are less than in *Bravo*. Because both *Bravo* and the cases that court relied upon are persuasive, this factor weighs against a 33% award. *See Bellinghausen*, 306 F.R.D. at 261 (awarding the 25% benchmark even after counsel litigated several motions to dismiss, engaged in significant discovery, and negotiated a seven-figure settlement for the class); *Ontiveros v. Zamora,* 303 F.R.D. 356, 374–75 (E.D. Cal. 2014) (awarding the 25% benchmark even when "novel legal theories" that could "impact state labor law" were involved).

### 6. Class Reaction

"The presence or absence of objections from the class is also a factor in determining the proper fee award." *In re Heritage Bond Litig.*, 2005 WL 1594389, at \*15. As discussed, class notice of the proposed settlement was disseminated in accordance with the notice procedures approved by the Court, and there have been no objections to the Settlement Agreement, including the requested fees award. This factor therefore weighs in favor of awarding the requested 33% fees award.

### 7. Lodestar Cross-Check

The Court considers the $286,745.00 lodestar figure, the claimed 447.2 hours worked, and the 4.6 multiplier in performing its reasonableness check using the lodestar method. *See* (Fees Mot. at 17–19). To calculate the lodestar, the court must multiply the number of hours the attorneys reasonably spent on the litigation by the reasonable hourly rate in the community for similar work. *McElwaine v. U.S. West, Inc.*, 176 F.3d 1167, 1173 (9th Cir. 1999); *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). Attorneys' fee awards should include compensation for "all hours reasonably expended prosecuting the matter," excluding "hours that are excessive, redundant, or otherwise unnecessary." *Martinez*, 2021 WL 9181893, at \*10. "The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting." *Thieriot v. Celtic Ins. Co.*, No. C-10-04462-LB, 2011 WL 1522385, at \*6 (N.D. Cal. Apr. 21, 2011) (citation omitted); *see also Bravo*, 2017 WL 708766, at \*18 (finding an hourly rate reasonable even when "counsel does not provide adequate support for [counsel's] proposed hourly rate" because for the purposes of a "lodestar 'cross-check' [it] need not be as exhaustive as a pure lodestar calculation" (cleaned up)).

Here, Class Counsel represents that it spent 477.2 hours litigating this case, which includes prosecuting the De Leon Action. Based on its review of the hours worked, the Court finds the hours worked to be reasonable, not duplicative or excessive, with no evidence of block-billing. *See* (ECF No. 61-2). While 477.2 hours would be a substantial

amount of work for only the Estrada Class Action, it appears reasonable when considered with Class Counsel's prosecution of the De Leon Action.

The Court, however, is not persuaded that either the hourly rates requested by Class Counsel or the multiplier are supported by the circumstances here. Class Counsel submitted hourly rates that range between $550 and $850, depending on the attorney's experience. (Odenbreit Decl. ¶ 24 (noting that Kevin Mahoney's hourly rate is $850, Katherine Odenbreit's hourly rate ranges between $750 and $850, the hourly rate for other attorneys with more than 5 years of experience ranges from approximately $550 to $650)). In support of this rate, Class Counsel only submits her own statements in her declaration stating that these rates "have been approved in similar type lawsuits in state court and federal court." (*Id.*). *Cf. Hang v. Old Dominion Freight Line, Inc.*, No. 5:21-CV-00287-JWH-DTBX, 2024 WL 2191930, at *13 (C.D. Cal. May 14, 2024) (observing that the 2022 Real Rate Report provided that in "Los Angeles, partners who practice labor and employment law at mid-sized firms have an hourly rate ranging from $567 (first quartile) to $870 (third quartile), with a median rate of $677," and associates "have an hourly rate ranging from $335 (first quartile) to $525 (third quartile), with a median rate of $380"). While most of the attorneys' rates fall within the 2022 Real Rate Report's ranges for Los Angeles partners and associates working in labor and employment, each of the rates fall toward the high end of the ranges. Further, the lodestar figure divided by the number of hours worked results in an approximately $641.20 average hourly rate. The Court is not persuaded that all of the hourly rates posited are reasonable, especially as Class Counsel applies its current rates to older tasks. Lastly, the requested 4.6 multiplier departs from the range approved by the Ninth Circuit, approximately 1.0-4.0. *See Vizcaino*, 290 F.3d at 1051 n.6.

### 8. Conclusion on Attorneys' Fees

In this case, Class Counsel obtained strong, but not exceptional, results for the Class; the risk of non-recovery at the outset of litigation did not differ from most other garden variety wage and hour class action cases; and the efforts of Class Counsel throughout this

litigation appear to have been satisfactory.  The Court finds that, on balance, the *Vizcaino* factors weigh against awarding the 33% fees award here, which is confirmed by the lode-star cross check.  While Class Counsel achieved a favorable result and appeared to perform well, the skill required and work performed were not demonstrably different than other garden-variety wage and hour actions.  Though district courts have awarded upward adjustments from the 25% benchmark in more complex wage and hour class actions where individual class member awards were higher or the parties heavily litigated the underlying issues, the Court is not persuaded that the record or terms of the settlement here supports doing so, especially in light of the quick settlement, minimal motion practice, and lack of novel legal issues involved in the case.  Accordingly, the Court GRANTS Class Counsel's requests for fees, but amends the amount to 25% of the Total Settlement Amount, amounting to $1,000,000.

### C.    Costs and Expenses

In class action settlements, "[a]ttorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters."  *See In re Omnivision Techs., Inc*., 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2008) (citing *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir.1994)).  "There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund."  *In re Heritage Bond Litig*., No. 02-ML-1475 DT, 2005 WL 1594403, at *23 (C.D. Cal. June 10, 2005) (citation omitted).

Class Counsel has submitted an itemized list of costs amounting to $29,789.54.  (ECF No. 61-2 at 42–54).  These costs include fees for delivery and service messengers, online research, court filing fees, cost for the mediator and court reporters, and copying expenses.  (*Id.*).  These costs appear reasonable and typical of other similar actions.  *See, e.g.*, *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014) (approving costs, including mediator, court fees, depositions in a wage and hour class action); *Barbosa v. Cargill Meat Sols. Corp*., 297 F.R.D. 431, 454 (E.D. Cal. 2013) (noting that frequently

reimbursed costs include items like mail charges and mediation fees). Thus, the Court GRANTS Class Counsel's request for costs.

## VI.    CONCLUSION

For the foregoing reasons, the Court:

1.  **GRANTS** Plaintiffs' Unopposed Motion for Final Approval and approves settlement of the action between Plaintiffs and Defendant, as set forth in the Settlement Agreement, as fair, just, reasonable, and adequate and directs the Parties to perform their settlement in accordance with the terms set forth in the Settlement Agreement;

2.  **GRANTS** an award to Class Counsel for $1,000,000 in attorneys' fees and $29,789.54 in costs to be paid to Class Counsel;

3.  **GRANTS** an award to Plaintiff Maria Estrada for $5,000 in exchange for a general release of her individual claims and finds that this amount is warranted and reasonable; and

4.  **DISMISSES** Plaintiff's case with prejudice, in accordance with the terms of the Settlement Agreement.

**IT IS SO ORDERED.**

Dated: July 29, 2024

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE